Thomas Murray **BURGE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17170.

United States Court of Appeals Eighth Circuit.

May 8, 1964.

Eugene P. Welch (appointed by the court), of Gross, Welch, Vinardi, Kauffman & Schatz, Omaha, Neb., made argument for appellant and filed brief.

Frederic J. Coufal, Asst. U. S. Atty., Omaha, Neb., made argument for appellee and filed brief with Theodore L. Richling, U. S. Atty., Omaha, Neb.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

JOHNSEN, Chief Judge.

Burge has appealed from his conviction, on a jury-waived trial, of transporting in interstate commerce, for the purpose of sale and distribution, obscene, lewd, lascivious and filthy pictures and films, in violation of 18 U.S.C. § 1465.

He had been using the alias Hale in his pornographic activities. He was a seasoned defendant; had experience in previous felony convictions; and chose on this basis apparently to act as his own attorney.[1] The Court advised him that in its opinion, from the nature of the offense and the possible penalty, he "should be represented by counsel, at least have the benefit of counsel and advice". It again made suggestion that he accept appointment of counsel, saying: "The Court will not force counsel upon you", but "(i)n the Court's judgment, you should have the benefit of counsel". Burge replied, "I refuse counsel", and he repeated thereafter that he did not want the Court to make appointment of counsel for him. The record clearly and conclusively demonstrates that there was an intelligent and understanding waiver of counsel by him. It may be added that it further shows that the Court solicitously engaged throughout the proceedings in protecting the record for him by appropriate inquiries and suggestions.

The principal contention urged for reversal is that the District Court erred in denying a motion to suppress the pornographic materials and in permitting them to be received in evidence. The effect of the Court's holding, in denying the motion to suppress and in finding Burge guilty on the evidence, was that the materials had not been the subject of an illegal search and seizure; that Burge had voluntarily turned them over to the police and had freely and intelligently given his consent to their taking possession of them; and that there was no merit in his claim that the police had ordered him to unlock the trunk of his car and that he had simply submitted to this assertion of authority from fear of what might happen to him, because he was "getting a little too old to take chances of physical punishment".

The incidents of Burge's unlocking of the trunk of the car and his turning over the case of revolting photographs occurred in broad daylight and on a public street. The two police officers involved testified that a report had come in that Burge was engaging in pornographic activity and was carrying the pictures about in his automobile (he had been in Omaha about a month); that they were assigned the task of making an investigation and drove around in the busi-

---

1. We appointed counsel to represent Burge on his appeal, and we hereby express our thanks and appreciation to counsel for his conscientious and capable handling of the case here.

ness area of Omaha trying to locate the car; that they spotted the car, saw Burge leave it and enter a tavern, waited until he was coming out and then engaged him in conversation, telling him that they had information that he had lewd and filthy pictures.

Burge admitted that the officers' approach to him had been, "We have a complaint we want to check out with you", and that they indicated they had been told that he was carrying the pictures in his car. According to the officers, he admitted that he had such pictures in his car. They testified that they told him they were simply investigating and did not have a search warrant, but that he stated he was willing to turn over the pictures, and that it was on this basis he unlocked the car and handed them the case in which the pictures were contained. While Burge denied this and testified that the officers declared they had a search warrant, which they did not exhibit, the Court could properly regard his credibility in this respect with skepticism, on his indicated knowledge from previous search-and-seizure experience that he was entitled to have such a warrant produced and exhibited to him, and on his ultimate admission after interrogation by the Court that there were no threats of any nature made against him.

■ No purpose can be served by setting out the evidence in detail. If Burge freely and intelligently gave his consent to the officers' taking possession of the pictures, there would not be an illegal search and seizure. Honig v. United States, 8 Cir., 208 F.2d 916; DeLapp v. United States, 8 Cir., 53 F.2d 627. Unless the situation required the conclusion as a matter of law that the evidence was without any substantial probative basis to support a finding that such a consent existed, the question would be simply one of fact for the trier's determination. United States v. Page, 9 Cir., 302 F.2d 81. And with the matter of probative weight between the conflicting testimony of Burge and the police officers turning entirely on the question of their respective credibility, the Court's

evaluation of that element and its application thereof to the evidence would make its finding of fact on consent without basis for seeking reversal. McDonald v. United States, 10 Cir., 307 F.2d 272. That is the situation which is here involved.

We might add that from the tactics in which Burge engaged throughout, as reflected by the record, it is difficult to believe that he was not acting with calculated scheme, and that what the police officers testified he did as to unlocking the car trunk and handing over the case of pictures was not part of a determined strategy. He could hardly have laid a better foundation for a deliberate attempt to charge illegal search and seizure —which would be his only possible hope in the situation of escaping conviction. On the unarguable realities of the pictures (sodomy, etc.) and his seasoned criminal experience, it does not seem likely that he would have been acting on any other basis in personally unlocking the trunk and handing the case of pictures to the officers, in a setting of broad daylight, public street and admitted absence of any threats, without demanding the production of a search warrant.

Again, his insistence upon representing himself and on being tried without a jury also strongly fits into the picture of such a calculated objective, with the greater freedom of stage and expression in which he could thus engage than under the restraints to which counsel would professionally be subjected, and under the controls which would necessarily be imposed in a jury trial.

Further, his immediate and peremptory demand, when the Court indicated that the pornographic materials would be received in evidence, that he be permitted to withdraw his previous plea and enter one of guilty (which the Court refused) adds an element of completion to the picture of his acting with organized scheme, as a manifest attempt to avoid having his cards played out by an adjudication and to hold on to them for a subsequent game in collateral attack.

Burge's second contention is that the Court erred in permitting the testimony of a witness named Young to be received against him, because Young had been intimidated, threatened and made promises of leniency, so that his testimony should have been held to be untrustworthy as a matter of law. Young was one of the models or subjects used by Burge in some of the lewd photographs, and he had accompanied Burge on the automobile trip from Oklahoma to Nebraska, on which the charge here involved was predicated. The Government used his testimony primarily to prove that Burge had carried the pictures on the trip and that he had engaged in sale, trade and distribution, both enroute and after reaching Nebraska.

It appeared that Young and a number of other persons were arrested by the Omaha Vice Squad for some activities engaged in after his and Burge's arrival in Omaha. These activities were made the subject of state prosecution. What Burge wanted to show on the trial here, as a basis for keeping Young's testimony from being admitted against him, was that an assistant state prosecutor had tried to get Young to testify against the other defendants in the state proceedings by promises of leniency and by threats that if he refused the state would see that a federal charge was filed against him. The federal charge allegedly threatened was not the transportation offense here involved, but that prosecution could be made of him as a fugitive from justice for having gone to California after the state charges against him were filed (although he had returned before the time of the trial of those charges) and also apparently that even without such a prosecution he could be made to give a federal bond as a witness.

All of this has the stamp of being simply more of Burge's smoke-screen

strategy on his trial. Young admitted that there had been no threats of federal prosecution of any nature against him at any time by federal officers, and that he had been specifically advised, after the federal investigation of the pornographic transportation offense was completed, that none was contemplated. His testimony shows that he was without any confusion on the witness stand as to the lack of authority of the assistant state prosecutor to threaten federal prosecution and as to the fact that such threats were not capable of any direct federal effect against him. Moreover, he stated that he had refused to testify against the other state defendants, despite the assistant state prosecutor's promises and threats, so that manifestly there had been no effect in fact therefrom in relation to the state prosecution, and certainly there could not be held to be any as a matter of law in respect to Burge's trial.

But even if it might have been possible for the assistant state prosecutor's promises and threats to affect Young's mental attitude and influence his testimony on the federal trial, this would not have made the evidence incompetent. Any such possibility which could be involved was merely a factor for the trier-of-the-facts' consideration in evaluing Young's credibility and the weight of his testimony. Black v. United States, 8 Cir., 309 F.2d 331; Ryan v. United States, 8 Cir., 99 F.2d 864; White v. United States, 4 Cir., 279 F.2d 740; United States v. Rosenberg, 2 Cir., 195 F.2d 583; United States v. Rainone, 2 Cir., 192 F.2d 860.

Burge's final contention is that error exists as a matter of law in the operative date of his sentence. On the judgment entry, the three-year sentence involved was made to run consecutively to a sentence of 90 days imposed by the Court for criminal contempt occurring on the trial.[2] The contempt sentence was im-

---

2. The contempt consisted of flagrant acts and expressions of disrespect toward the Court, haughty retraction of an apology previously offered for his conduct, charge of lack of integrity in the Court's action, and open invitation to be held in contempt —with previous admonition and warning having been duly and restrainedly given to him.

posed after his conviction of the transportation offense but a few days before he was sentenced on that offense.

The substance of what Burge contends is that the judgment entry on which the contempt sentence was to become effective was legally void, and hence the consecutiveness predicated upon it as to the transportation sentence caused the latter to not operate on time for which there was no other basis of holding him imprisoned.

The basis of the argument made is that at the time of his trial Burge was serving a state court sentence which still had longer to run than the ninety days imposed on him for contempt; that in its pronouncement of the contempt sentence, the Court said nothing about its relationship or sequence to the state sentence and it therefore became concurrent with the state sentence as a matter of law; that it thus had been served and had expired when he was released from the longer state sentence and was turned over to the Attorney General for commitment; that in the judgment entry made as to the contempt sentence, however, the Court ordered that the sentence run consecutively to the state-court term; that this was a variance of substance from the oral pronouncement, was done without Burge being present, and on both of these grounds the judgment entry was void; that in the legal situation so existing it was error for the Court to have predicated consecutiveness of the transportation sentence upon the void judgment entry, and that the sentence could only be given consecutive operation to the concurrent running of the state and contempt sentences.

The contention is urged here at Burge's insistence and in his firm faith in his own legal ability. The fallacy of it, however, is that Burge was and remained a state prisoner during his trial, and through the approximately six-months period thereafter while he was completing his state sentence. Legal custody of him was not surrendered by the state to the federal government until after that time.

■ 18 U.S.C. § 3568, as here pertinent, provides: "The sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence. * * * No sentence shall prescribe any other method of computing the term". The effect of this provision is that a federal sentence imposed on a state prisoner, who has been permitted by the state to go to trial in a federal court but as to whom the state has not surrendered legal custody, is as a matter of law without punitive operation until the United States is given or has obtained custody enabling and entitling it to enforce the sentence.

In this connection there should also be noted the provision of 18 U.S.C. § 4082, that "Persons convicted of an offense against the United States shall be committed, for such terms of imprisonment as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served".

■ Whether the Court might by express provision in its pronouncement and judgment have made the contempt sentence run concurrently with the state sentence so as to give it operation while Burge was still in state custody, we need not consider. There are cases holding that this cannot legally be done, and that any provision in a sentence which is inconsistent with the language of § 3568 is surplusage and of no effect. See e. g. Harrell v. Shuttleworth, 5 Cir., 200 F.2d 490; United States v. Ayscue, D.C. E.D.N.C., 187 F.Supp. 946, aff'd. per curiam 4 Cir., 287 F.2d 887. However that may be, it is in any event certain that under § 3568 it would not be necessary for the Court to use any language of sequence in its pronouncement of the

contempt sentence in order for that sentence to have consecutive operation to the state sentence. Thus there clearly is no merit in Burge's contention.[3]

Affirmed.

---

3. While Burge asked to have his contempt sentence vacated as being void, he could not seek that relief here, since only his pornographic sentence was the subject of this appeal. To effect disposition of the question which he is attempting to raise, we have dealt with its merits in the manner indicated above.