The State of Ohio, Appellee, *v.* Wingerd, Appellant.

[Cite as State v. Wingerd (1974), 40 Ohio App. 2d 236.]

(No. 733—Decided January 14, 1974.)

*Messrs. Lavelle & Yanity* and *Mr. Charles David Frey*, for appellant.

*Mr. Michael Nolan*, for appellee.

Gray, J. This cause is in this court on appeal from the Municipal Court of the city of Athens. Defendant was charged with and convicted of possession of marijuana, contrary to the provisions of R. C. 3719.41. Defendant had a bench trial. A motion to suppress evidence was filed and overruled. Later, a trial on the merits occurred with a conviction resulting. Defendant filed the following assignment of error:

"The trial court committed prejudicial error when it failed to sustain defendant's motion to suppress or exclude evidence."

James Hoffman on the day in question had responsibility for the operation of residence halls on the East and College Green of Ohio University. In this capacity, he was charged with responsibility for the management of Scott Quad where the offense is alleged to have occurred. On the 26th of January, 1972, Hoffman received a call from a member of his staff at Scott Quad that an individual was offering drugs for sale therein. He went to investigate. It now becomes important that we learn exactly what occur-

red. That is best accomplished by quoting Hoffman directly. He testified as follows·

"A. We knocked on the door and Mark answered the door. We asked him if we could come in. We went into the room and shut the door. He indicated to—He (Zaler) indicated to Mark that we had reason to believe that he had drugs, either on his person or in his room, and would he give them to us, which he did.

"Q. Did you tell Mr. Wingerd you had a search warrant?

"A. No, I don't think so. I don't recall.

"Q. You took the search warrant?

"A. Yes.

"Q. You did not show that to Mr. Wingerd?

"A. I don't recall, no.

"Q. Do you recall whether Mr. Zehner may have?

"A. No. I had it on my person, in my pocket.

"Q. You did not show it to Mr. Wingerd?

"A. I don't actually recall whether I did or didn't. Well, if it is of any help, we don't automatically impose the search-and-seizure policy. It's standard procedure in my instance to first ask whether or not the individual has any and will he, in fact, co-operate and give it to us, which he did. Other than that, I don't recall.

"* * *

"Q. Now, you say the defendant gave to you the materials you were seeking?

"A. Yes. He gave to us some, you know, a shoebox with five bags of what appeared to be marijuana, and then Carl asked whether or not he had any sopors on h·m. He went into his pocket and gave us four capsules.

"* * *

"Q. So in other words, its your testimony that you came to the defendant's room, knocked, he opened the door and allowed you to enter. You entered and then said something to the effect, 'Do you have any drugs,' and, with that question, he responded by going to some portion of his room and then tendering to you a box that contained marijuana?

"A. That's right."

238

In the trial on the merits Carl Zaler testified as follows:

"A. Mark saw me, and Mark had been a resident in Bush Hall. He did know who I was. We were surprised to see each other. He let me in the room. I told Mark that we had reason to believe that he had drugs in his possession, and we would like for him to hand them over to us, the other person being, again, the Greens Director, Jim Hoffman. Mark did not give us any problem at all, no hassle or anything. He went immediately to his closet and brought out a shoe box from the shelf in his closet and handed it over to me.

"I handed it to Jim Hoffman, and told Mark that it was my understanding that he had some sopors in his possession, and he asked him to hand those over, too. And at that time he handed over some colored tablets to me and I put them in the box."

Defendant filed his notice of appeal thereby lodging the case in his court for review.

We are of the opinion that no prejudicial error occurred. The lower court during the trial stated that it was its opinion that the defendant consented to the search. We agree.

We think it clear from the record that defendant agreed to the search without a word of complaint or objection and in a setting which is not to be equated with the aura of oppressiveness which oft pervades the precincts of a police station. The trial court held the physical evidence to be admissible, and we cannot say it erred in so doing.

The protection afforded by the Fourth and Fourteenth Amendments, with respect to a search of one's house may, of course, be waived by consent freely and intelligently given. Whether such consent exists is usually a question which is "simply one of fact for the trier's determination." *Burge* v. *United States* (C. C. A. 8, 1964), 332 F. 2d 171, 173, cert. denied 379 U. S. 883.

If the finding is in the affirmative and is supported by substantial evidence, it is not our privilege on appeal to

revise it. *Maxwell v. Stephens* (C. C. A. 8, 1965), 348 F. 2d 325, 336; *Burge v. United States, supra* at 173; *Burnside v. Nebraska* (C. C. A. 8, 1965), 346 F. 2d 88, 90.

We specifically hold that the finding of the trial court is supported by substantial evidence and no prejudicial error occurred because of its overruling of the motion to suppress.

While we believe that the above authorities are dispositive of the issue in this case, our research has led us to other interesting facets of the question before us. *Burdeau v. McDowell* (1921), 256 U. S. 465, 41 Sup. Ct. 574, while an old case is still the law. Headnotes 1 and 2 of 41 Sup. Ct. state as follows:

"1. * * *

"Const. U. S. Amend. 4, giving protection against unlawful searches and seizures, applies only to *governmental action*, and that amendment is not violated by the seizure of private papers by a private corporation from the possession of a director and employe, though such seizure was unlawful." (Emphasis supplied.)

"2. * * *

"Const. U. S. Amend. 5, securing a citizen from compulsory testimony against himself, is not violated by the use of his private books and papers in a criminal prosecution against him, where the books and papers had been seized, even though unlawfully, by a private corporation of which he was director, without the knowledge or connivance of any public officer, and had been thereafter turned over to a special agent or the Attorney General."

The origin and history of the Fourth Amendment shows that it was intended as a restraint upon the activities of *sovereign authority*.

The U. S. Supreme Court in *Coolidge v. New Hampshire*, 403 U. S. 443, at page 488, said:

"The exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct. They are 'to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' *Elkins v. United States,* 364 U. S. 206,

240

217. But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. If, then, the exclusionary rule is properly applicable to the evidence taken from the Coolidge house on the night of February 2, it must be upon the basis that some type of unconstitutional police conduct occurred."

The philosophy of the Ohio Supreme Court in such an instance is stated in *State* v. *Bolan*, 27 Ohio St. 2d 15, at pages 18 and 19, as follows:

"Essentially this same conclusion has been reached almost uniformly by courts of other jurisdictions. The rationale of these cases is that the duty of giving 'Miranda warnings' is limited to employees of governmental agencies whose function is to enforce law, or to those acting for such law enforcement agencies by direction of the agencies; *that it does not include private citizens not directed or controlled by a law enforcement agency, even though their efforts might aid in law enforcement.*" (Emphasis supplied.)

"In drawing a line of demarcation between questioning by governmental law enforcement personnel and questioning by private citizens, these cases not only have adhered to the restricted meaning of 'custodial interrogation' employed in Miranda, but also are in accord with the rationale of *Burdeau* v. *McDowell* (1921), 256 U. S. 465, where a similar distinction was made as to the admissibility of evidence obtained by unlawful search and seizure."

See *Healy* v. *James*, 408 U. S. 169, for the ideology of the United States Supreme Court pertaining to the rights, obligations, and immunities of students on college campuses.

For the above reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*


ABELE, J., concurs.
STEPHENSON, P. J., dissents.

STEPHENSON, P. J., dissenting. I respectfully dissent from the judgment and opinion in this appeal. My reason for doing so is that its disposition cannot properly rest either upon simply determining the sufficiency of the evidence presented upon the motion to suppress to support a trial court's findings of consent or, under this record, by a conclusion that the residence personnel were "private persons" not subject to Fourth Amendment restrictions.

Appellant contended in the suppression hearing that the resident dormitory personnel who seized the evidence were agents of public police authority by reason of being required by Ohio University policy to investigate drug violations in the dormitories, being authorized to use "administrative search warrants" (not further explained) for such purpose, and being required to turn over evidence to security officers of the university who have general police power on university property, pursuant to R. C. 3345.04. The above appears, for the most part, by proffer since the trial court sustained objections to such proof. It is then asserted that the turning over of the disputed evidence was on the basis of the administrative search warrant which was invalid and the consent was thus involuntary under *Bumber* v. *North Carolina,* 391 U. S. 543.

The only witnesses testifying at the suppression hearing were called by appellant. In rejecting evidence with which it was sought to show that the persons who secured the evidence were agents of governmental authority, the court twice stated that "up to that point" the evidence disclosed consent. Subsequently, however, the appellant, who was the last witness, testified, in substance, that he consented only because the residence personnel stated they had a search warrant.

The following statement was then made by the trial court at the conclusion of the evidence:

"THE COURT: The motion to suppress evidence in the case on unlawful search of the defendant's dormitory, there is no evidence whatsoever of any unlawful search. *The* question raised under testimony is whether or not there was an unlawful search by reason of some possible

connection of the people who picked up the marijuana from the defendant with the Security Division.

"The Court finds you have failed to establish that. Therefore, the motion to suppress will be overruled." (Emphasis added.)

It is submitted that it is impossible to discern whether the court had concluded that valid consent had been given, or, irrespective of consent, that the controlling issue was a failure of proof with respect to a relationship between the residence personnel and the security officers.

In *Ker* v. *California*, 374 U. S. 23, the court stated, at 33:

"* * * We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the fundamental criteria laid down by the Fourth Amendment and in opinions of this Court applying that Amendment."

Implicit in such requirement, if the protection of Fourth Amendment claims are to be viable and appellate review meaningful, is a duty upon trial courts to resolve the factual questions presented and enter meaningful findings in the record. Such findings are now mandated by Criminal Rule 12(E). In suppression hearings respecting confessions, the United States Supreme Court in *Jackson* v. *Denno*, 378 U. S. 368, held it was the duty of the trial court to enter into the record clear cut determinations of the voluntariness of the confession including resolutions of disputed factual questions. Some courts, outside of Ohio, have adopted the view that the same duty rests upon the trial court in suppression hearings under the Fourth Amendment. *State* v. *Wood*, 8 N. C. App. 34, 173 S. E. 2d 563; *State* v. *Harr* (W. Vir. 1973), 194 S. E. 2d 652; *State* v. *Basden*, 8 N. C. App. 401, 174 S. E. 2d 613; *Compton* v. *People*, 166 Colo. 419, 444 P. 2d 263. I agree with such reasoning. Hence, I would hold that the trial court erred in failing to pass upon and resolve the consent issue with appropriate findings and by reason of such omission, we are precluded from affirming upon the basis of a valid consent.

I am also of the view that the trial court erred prejudicially, in the absence of a finding as to consent, in rejecting evidence tendered by appellant upon his claim that the dormitory personnel were acting as agents for the university security police officer. *Burdeau* v. *McDowell*, 256 U. S. 465, does not preclude such inquiry since if, as claimed, there is a participation by governmental authorities, the protection of the Fourth Amendment applies. The decision of the Ohio Supreme Court in *State* v. *Bolan*, 27 Ohio St. 2d 15, if it is relevant at all to a "private person" versus "governmental" determination with respect to a Fourth Amendment claim, is clearly distinguishable since the only statutory authority of the merchant security officer in *Bolan* case was the limited detention authority granted to all store employees by R. C. 2935.041.

The interplay between Fourth Amendment rights of college students and the rights of colleges to enact reasonable regulations as to the use and control of dormitories is in the development stage. See cases annotated in 49 A. L. R. 3rd 978. Since, in the final analysis, reasonableness is the controlling criterion, appellant should have been permitted to present any relevant evidence to support the contention that there was governmental action in securing the evidence and that such action was unreasonable by Fourth Amendment standards.

While I would not sustain the assignment of error to the extent appellant urges and hold the evidence inadmissible, I would reverse and remand for a new hearing on the motion to suppress. If, upon such hearing, it is determined that the motion to suppress should have been sustained, a new trial should be ordered. If, upon such hearing, the motion is again overruled, a new judgment should be entered adjudicating appellant guilty. For authority for such limited reversal, see *State* v. *White*, 15 Ohio St. 2d 146.