The STATE of Ohio, Appellee,

v.

HEAVEN, Appellant.

[Cite as *State v. Heaven* (1990), 65 Ohio App.3d 832.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56081.

Decided Jan. 8, 1990.

*John T. Corrigan,* Prosecuting Attorney, and *John Porter,* Assistant Prosecuting Attorney, for appellee.

*David L. Doughten,* for appellant.

---

ANN McMANAMON, Chief Justice.

Leroy R. Heaven appeals convictions of possessing cocaine (R.C. 2925.11) and criminal tools (R.C. 2923.24). In two assignments of error, he claims the trial court incorrectly overruled his motion to suppress physical evidence and that the evidence itself was insufficient to sustain his conviction of possessing criminal tools. Because we find his first assignment to be well taken, we reverse the convictions and remand this cause for a new trial.

On September 22, 1987, police received information from what the court characterized as a "source of questionable reliability," who was new to police. This informant told the officers that two Jamaican nationals, "Leroy" and "Alan," were registered at the Lake Erie Motel. The informant revealed that "Alan" was a suspect in a Florida homicide and that he possessed one-half kilo of cocaine. The Lake Erie desk clerk averred that police took the suspects' registration cards and passkeys at 10:30 a.m. on September 22. A police officer, however, swore they did not receive the informant's tip until between 4:00–7:00 p.m. on September 22 and did not investigate and obtain the keys until the early morning hours of September 23.

At any rate, police made no attempt to obtain a search or arrest warrant in the seven to fifteen hours' time between their receiving the information and their surrounding the suspects' hotel rooms with a SWAT team at 2:30 a.m.

Although "Alan" was in police custody by that time, officers in the hotel lobby phoned Heaven and, immediately after their call, officers stationed in the hall pounded on Heaven's door asking to speak to him. Robin Sims, his wife, emerged from the motel room in her nightgown and the door closed behind her. Police swore they heard a toilet flushing and "swift movement" in the suite. The officers who claimed they feared the destruction of evidence beat on the door, ordering Heaven to come out with his hands on his head. Just as police began to open the door with the passkey, Heaven, clad only in

his T-shirt and underpants, emerged and was frisked and handcuffed in the hall.

Police stated that, at this point, Heaven verbally consented to the search of his suite, which produced a gram scale in an up-ended sofa, two plastic bags containing white residue, as well as $970 cash and a weight conversion table in Heaven's wallet. Heaven and Sims testified that police took Heaven downtown clad only in his underwear because he refused to sign a consent form for the search.

In his first assignment of error, Heaven challenges the denial of his motion to suppress physical evidence because he did not consent to the search of his hotel room.

The trial court determined that the police officers' information, from "a new informant, who they did not know his reliability [*sic* ]," related only "peripherally" to Heaven and that it would probably not have constituted sufficient probable cause to obtain a warrant. In addition, the judge noted that "Alan," the alleged murder suspect and drug possessor, was in custody at the time police searched Heaven's room. As a result, the trial court concluded the sound of footsteps and a toilet flushing did not create an exigent circumstance. The court, however, denied the motion to suppress because it found the search to be consensual.

■ A warrantless arrest may be made in a public place if based upon probable cause. *United States v. Watson* (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598. The doorway of a house has been held to be a public place. *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300.

■ The trial court properly found that the police information was unreliable and insufficient to justify the issuance of an arrest warrant for Heaven, particularly as the information actually related to "Alan," who was already in custody, and not to the defendant.

■ When there is no probable cause to arrest, an unlawful arrest cannot be made good by an illegal search which uncovers drugs on the premises. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

■ Police took Heaven into custody as he emerged from his hotel room. After that, police purportedly obtained his consent to search his room and, only then, discovered the cocaine and scale that Heaven was ultimately convicted of possessing.

Consent to a search given only after a defendant was unlawfully confined has been held ineffective to justify a search because there was no proof of a

"break in the chain of illegality." *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229.

Police lured Heaven to the doorway of his hotel room at 2:30 a.m. where they arrested him without probable cause. Their only information was that Heaven was a Jamaican and had a room in the same hotel as "Alan." As Heaven's consent under these circumstances was insufficient to remove the taint of his illegal detention, the trial court erred in denying Heaven's motion to suppress the physical evidence.

We note that, although police obtained their information seven to fifteen hours before they acted, they made no effort to obtain warrants and offered no explanation as to why a warrant, if justified, could not "easily and conveniently have been obtained." Cf. *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290.

The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ Police actions that dispense with the necessity of a warrant and invade the sanctuary of one's residence, in contravention of Fourth Amendment guarantees, should not be condoned merely because they are executed in furtherance of a highly publicized "drug war." "A search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." *United States v. Di Re* (1948), 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210, 220 (Jackson, J.).

Because the warrantless search of Heaven's hotel room was illegal for want of probable cause, exigent circumstances or consent, we find the trial court incorrectly denied the motion to suppress the physical evidence.

The first assignment of error is well taken.

Heaven's second assignment of error challenges the sufficiency of the evidence sustaining his conviction of possessing the gram scale and plastic bags containing white residue. We need not address this issue as it is mooted by our finding that these items were improperly admitted into evidence as the products of an illegal search.

The judgement of the trial court is reversed and the cause remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

PATTON, J., concurs.

MATIA, J., dissents.

DAVID T. MATIA, Judge, dissenting.

Since I am disagree with the majority opinion's liberal rendition of the facts, and its disregard of our limited scope of review in these matters as an appellate court, I respectfully dissent. I find it necessary to restate the facts as they appear in the record.

Defendant-appellant, Leroy R. Heaven, appeals from his convictions in the Cuyahoga County Court of Common Pleas for drug abuse, R.C. 2925.11, and for possessing criminal tools, R.C. 2923.24.

Appellant was tried jointly with his wife, co-defendant Robin Sims, with whom he had been arrested. A co-defendant, Sims, was discharged, however, after the trial court granted her motion for acquittal pursuant to Crim.R. 29.

I

The Facts, Generally

Evidence adduced at trial revealed that appellant is a Jamaican citizen who resides in Sunrise, Florida. In late September 1986, appellant traveled to Cleveland, Ohio, where his wife resides, and checked into Room 312 at the Lake Erie Motel on September 21, 1987.

Sergeant Charles Lane of the Cleveland Police Narcotics Unit testified that on September 22, 1987, he had received information leading him to suspect that two Jamaicans staying on the third floor of the Lake Erie Motel were in possession of a large amount of cocaine, and that one of them, named Alan, was a suspect in a Florida homicide. Police officers sent to the motel obtained a master key from the desk clerk, and learned that the two suspects were in Room 312 and Room 316. Room 316 was secured first by the police, and *a gun was found therein.* The police then focused on Room 312.

Sergeant Lane testified that he knocked on the door of Room 312 and announced that he was a police officer. Robin Sims, the defendant's wife and a co-defendant at trial, opened the door and walked into the hall to talk to the police. The door closed behind her, and noises were heard from inside the

room which sounded to the police like someone running a short distance, followed by the slam of a toilet seat against the tank. Using the master key, the police opened the door and entered the room, finding appellant, Heaven, coming out of the bathroom.

The police informed appellant that they suspected he was in possession of cocaine. Appellant denied this, and stated that he had nothing to hide. According to Sgt. Lane, appellant was then asked if the police could look around in the room, and appellant replied, *"I have nothing to hide. Go ahead and search. You are not going to find anything."* (Emphasis added.) Appellant refused, however, to sign a written consent form offered by the police. Police observed two large plastic bags in the bathroom, one in the toilet bowl and one on the floor next to the toilet. The plastic bags were collected, and a small amount of white powder was confiscated from the rim of the toilet. While the majority opinion might lead one to believe that cocaine was found in the plastic bags which were confiscated, in fairness to the appellant I feel it necessary to note that there is no evidence in the record to support this statement. Rather, *the only cocaine found was taken from the rim of the toilet seat,* which powder was scraped into police envelopes and then placed in *police evidence bags.* This powder was later scientifically identified as cocaine. Police also seized a digital pager from Robin Sim's purse, a weight conversion table written on a piece of paper and nearly a thousand dollars in bundles of $100 from appellant's wallet, and an Ohaus triple-beam scale from under a couch in the room. Appellant and Robin Sims were indicted, and their joint trial began April 19, 1988. Co-defendant Robin Sims was acquitted after presentation of the state's case; appellant was found guilty on both counts, and sentenced to one year of incarceration plus costs on each, to run concurrently.

## II

### Consent Search

In his first assignment of error, appellant contends:

"The trial court erred by overruling the defense motion to suppress physical evidence."

In contrast to Sgt. Lane's testimony, noted above, appellant and Robin Sims testified that the police never asked for consent, and that none was ever given. Appellant also asserted that he was coerced and intimidated by the police.

The majority opinion seems to assert that probable cause is lacking in the instant case. Probable cause is, however, not at all relevant to the validity of a consent search. The majority opinion intimates that the trial court found that there was insufficient probable cause to obtain a warrant. While I first point out that a trial court's personal comments from the bench do not constitute a "determination," I further note that the warrant requirement is also completely irrelevant to the propriety of a search based on consent. I find it necessary to set forth the *relevant* law applicable to the instant case.

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued upon probable cause is *"per se* unreasonable * * * subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, at 357, 88 S.Ct. 507, at 514, 19 L.Ed.2d 576, at 585; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Posey* (1988), 40 Ohio St.3d 420, at 427, 534 N.E.2d 61, at 66. One of the specifically established exceptions to the warrant and probable cause requirements is a search conducted pursuant to consent. *Schneckloth, supra; State v. Childress* (1983), 4 Ohio St.3d 217, 4 OBR 534, 448 N.E.2d 155.

When the state purports to rely on the consent exception, it must prove to the trial court by clear and positive evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina* (1968), 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; *Posey, supra; State v. Danby* (1983), 11 Ohio App.3d 38, 11 OBR 71, 463 N.E.2d 47. Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth, supra; Posey, supra.* Since one would never be able to glean this court's scope and standard of review from the majority opinion, I note that it is not unlimited. *This court should not reverse a trial court's decision regarding the validity of consent if the finding is supported by substantial evidence. State v. Winger* (1974), 40 Ohio App.2d 236, at 238, 69 O.O.2d 217, at 218, 318 N.E.2d 866, at 868. As stated by this court in *State v. McCarthy* (1969), 20 Ohio App.2d 275, at 284, 49 O.O.2d 364, at 370, 253 N.E.2d 789, at 796:

"[In consent search cases, the] appellate court will accept the finding of the trial court *unless it is clearly erroneous.* This occurs because the trial court is best able to gauge the credibility of witnesses." (Emphasis added.)

Other cases utilizing the "clearly erroneous" standard of review include *Wren v. United States* (C.A.10, 1965), 352 F.2d 617, certiorari denied (1966), 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542; and our own *State v. Elison* (Jan. 11, 1979), Cuyahoga App. No. 38807, unreported.

This court explained in *State v. Collins* (Apr. 16, 1981), Cuyahoga App. Nos. 42389 and 42390, unreported, a case involving very similar factual disputes, as follows:

"At a hearing on a motion to suppress, the trial court sits as both trier of fact and law. As trier of fact, the trial court thus had the responsibility of resolving any conflicts in testimony and evaluating the credibility of the witnesses in determining the factual issues of whether appellant consented and whether the consent was voluntary. *As a reviewing court, we can only say that [the arresting officer's] testimony alone was sufficient to demonstrate that the search had been undertaken pursuant to a voluntary consent.*" (Emphasis added.)

Moreover, we have held that "*a trial court may find voluntary consent based on a police officer's testimony that the consent was freely given.*" (Emphasis added.) *State v. Haynes* (Apr. 28, 1983), Cuyahoga App. No. 45467, unreported, 1983 WL 5973, *citing State v. Kelly* (Oct. 22, 1981), Cuyahoga App. Nos. 42929 and 42939, unreported, 1981 WL 4579. The trial court is, of course, free to believe the testimony of the state's witnesses, and to disbelieve that of the defense. See *Kelly, supra,* at 7.

I am unable to say, upon review of the record, that the trial court's ruling was clearly erroneous. There was substantial evidence, in the form of Sgt. Lane's testimony, supporting the court's finding of a valid consent search, and so *this court is without authority to reverse on this issue, our personal beliefs notwithstanding.*

Accordingly, I find appellant's first assignment of error is not well taken.

### III

### Possessing Criminal Tools

Appellant asserts in his second assignment of error that:

"The evidence is insufficient to sustain a conviction of possession of criminal tools."

In the bill of particulars filed by the prosecution, only the Ohaus triple-beam scale and the plastic bags were listed as criminal tools. Appellant argues that the evidence was insufficient to justify conviction for possessing these items.

Possessing criminal tools is proscribed at R.C. 2923.24, which provides in pertinent part as follows:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:

" * * *

"(3) Possession or control of any substance, device, instrument, or article commonly used from criminal purposes, under circumstances indicating such item is intended for criminal use.

"(C) Whoever violates this section is guilty of possessing criminal tools, a felony of the fourth degree."

Concerning a claim of insufficient evidence, " * * * the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Martin* (1983), 20 Ohio App.3d 172, at 175, 20 OBR 215, at 218–219, 485 N.E.2d 717, at 720.

This court will not reverse a verdict supported by substantial credible evidence from which a trier of fact could reasonably conclude that each element of the offense charged has been proved beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

The record reveals that an Ohaus triple-beam scale was recovered by police under a couch in a motel room under the exclusive control of the appellant. Sergeant Lane's testimony that such scales are commonly used for criminal purposes was unrebutted. Further, cocaine and large plastic bags were found in the same room in which the scale was discovered.

Clearly, a rational juror could reasonably conclude that appellant possessed or had control over the scale under circumstances indicating that it was to be used in a criminal manner. I find appellant's second assignment of error not well taken.