[Cite as *State v. Driscol*, 2014-Ohio-5608.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-129** |
| CHARLES DRISCOL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000262.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Karen A. Sheppert*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Michael P. Maloney*, 24441 Detroit Road, #300, Westlake, OH 44145 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Charles Driscol, appeals from the November 25, 2013 judgment of the Lake County Court of Common Pleas, sentencing him for trafficking in heroin, possession of heroin, tampering with evidence, and possessing criminal tools following a jury trial.[1] On appeal, appellant challenges the sufficiency of the evidence regarding

---

1. Appellant additionally appeals from the trial court's October 17, 2013 judgment, deferring sentencing and referring the matter to the Adult Probation Department following the jury's guilty verdict.

the trafficking in heroin counts and the representation of his trial counsel. For the reasons that follow, we affirm.

{¶2} On July 22, 2013, appellant was indicted by the Lake County Grand Jury on seven counts: count one, trafficking in heroin, a felony of the first degree, in violation of R.C. 2925.03(A)(1); count two, trafficking in heroin, a felony of the second degree, in violation of R.C. 2925.03(A)(2), with a forfeiture specification; count three, possession of heroin, a felony of the second degree, in violation of R.C. 2925.11, with a forfeiture specification; count four, tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1); count five, possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24, with a forfeiture specification; count six, possession of heroin, a felony of the third degree, in violation of R.C. 2925.11, with forfeiture specifications; and count seven, possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24, with forfeiture specifications.[2] Appellant waived the right to be present at his arraignment and the trial court entered a not guilty plea to all charges on his behalf.

{¶3} A jury trial commenced on October 7, 2013. Twelve witnesses testified for appellee, the state of Ohio. They collectively established that appellant was involved in a drug transaction at Pine Ridge Apartments in Willoughby Hills, Lake County, Ohio, on March 21, 2013.

{¶4} During the execution of a search warrant at Room 523, police seized heroin from resident Trevaughn Patterson ("Patterson"). Patterson was arrested. Detective Donald Dondrea ("Detective Dondrea") testified that Patterson cooperated

---

2. Count one was later amended to reflect a felony of the second degree.

with police and made a controlled phone call to his supplier, "ATL." During this call, Patterson ordered more heroin to be delivered to his fifth floor apartment that afternoon.

{¶5} Members of various law enforcement agencies in Lake County were involved in this operation and waited for "ATL" to arrive at Pine Ridge Apartments. Some officers blocked exits of the apartment building. Other officers, including Detective Dondrea and Lieutenant Jonathan Bush ("Lieutenant Bush"), waited on a fifth floor hallway. Additional officers, including Detectives Ronald Parmertor ("Detective Parmertor") and Donald Moreland ("Detective Moreland"), were in a fourth floor apartment with Toby Ingram ("Ingram"), maintenance director of Pine Ridge Apartments, watching Room 523 from a live monitor.

{¶6} A short time after the controlled call, a man wearing a red baseball cap and a black hoodie (later identified as appellant) arrived in a Cadillac at the apartment complex. Video surveillance captured him entering the back of the building. His female passenger, Lakisha Williams ("Williams"), appellant's live-in girlfriend, waited for him in the car. Lieutenant Pat Hengst ("Lieutenant Hengst") radioed officers that the man was headed upstairs. Detective Dondrea and Lieutenant Bush indicated that as soon as the man saw the officers through the fifth floor stairwell window, he took off running up the stairs. As a result, a chase ensued.

{¶7} On the eighth floor, Detective Dondrea and Lieutenant Bush observed the man on his tiptoes with his hands raised in the air. Detective Dondrea radioed other officers that the man had placed something above the ceiling tile near the exit sign by Room 801. The chase continued down the hall. Detective Dondrea and Lieutenant Bush lost the man in the stairwell. However, within minutes, the man (identified at this

3

point as appellant) was arrested on the sixth floor. Detectives Dondrea, Parmertor, and Moreland as well as Lieutenant Bush all testified that appellant was tired, sweating, and out of breath. Appellant had no heroin in his possession and was not wearing the red baseball cap or the black hoodie when he was arrested.

{¶8} In the meantime, Officer Anthony Mino ("Officer Mino") secured the Cadillac driven by appellant. He ordered Williams, who was waiting for appellant in the passenger seat, to exit the vehicle. Officer Mino calmed her down and explained what was happening. Williams consented to a search of her and appellant's home at the scene and again later at the station. Williams signed a consent to search form. She provided officers with directions and a key to their home where contraband was later found, including heroin, digital scales, and cash in the couples' bedroom. Williams also told police at the station, several days after the incident at issue, that appellant went to Pine Ridge Apartments to sell heroin.

{¶9} Following appellant's arrest, officers discovered two baggies containing heroin in the drop ceiling near Room 801 (the spot where appellant was earlier seen on his tiptoes with his hands raised in the air during the police chase.) Also, Lieutenant Bush later went back to Patterson's fifth floor apartment. Lieutenant Bush saw a black string hanging down from the ceiling. He popped open the ceiling tile and found a red baseball cap and a black hoodie.

{¶10} When questioned, appellant told Detectives Parmertor and Moreland that he went to Pine Ridge Apartments to visit a girl named "Keisha" in Room 237. The detectives told appellant that Room 237 did not exist in the apartment building. Appellant then stated it was Room 231 instead. However, Room 231 also does not

4

exist in the building. Detective Parmertor testified that appellant told authorities he went to the apartment complex to buy marijuana from Patterson but denied any heroin involvement. Detective Parmertor further testified that appellant admitted putting his clothing above the ceiling tile.

{¶11} Lieutenant Hengst took a picture of appellant and showed it to Patterson. Patterson identified the man in the photo as "ATL," his heroin supplier. In addition, Lieutenant Hengst used his own phone and called the number that Patterson used to order the heroin. Appellant's phone rang and Lieutenant Hengst's number displayed on appellant's phone.

{¶12} At the close of the state's case, appellant's counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. Appellant did not present any witnesses and did not take the stand in his own defense.

{¶13} Following trial, the jury found appellant guilty on all seven counts. On October 17, 2013, the trial court deferred sentencing and referred the matter to the Adult Probation Department for a pre-sentence investigation and report. On November 25, 2013, the trial court ordered the following sentence: four years in prison on count one; four years on count two; count three merged with count two; 24 months on count four; 10 months on count five; 24 months on count six; and 10 months on count seven. Counts two, four, five, six, and seven were ordered to run concurrent with each other but consecutive to count one for a total prison term of eight years. Appellant was given 61 days of credit for time already served. The court further notified appellant that post-release control is mandatory for three years. Appellant timely appealed. He asserts the following two assignments of error:

5

{¶14} "[1.] The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence of identification.

{¶15} "[2.] Appellant was denied effective assistance of counsel and a fair trial as trial counsel's legal service fell below the standard of reasonable representation."

{¶16} In his first assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence that he was the heroin trafficker.

{¶17} With regard to sufficiency, in *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), the Ohio Supreme Court established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Court stated that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶18} As this court stated in *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13-14 (Dec. 23, 1994):

{¶19} "'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented.

{¶20} "'"* * * The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable

6

to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.*'"

{¶21} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence 'in a light most favorable to the prosecution,' '(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.'" (Emphasis sic.) (Citations omitted.)

{¶22} "[A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." *State v. March*, 11th Dist. Lake No. 98-L-065, 1999 Ohio App. LEXIS 3333, *8 (July 16, 1999). The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991). "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Id.* at paragraph one of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

**{¶23}** In this case, appellant alleges the state failed to present sufficient evidence with respect to his identity as the heroin trafficker at the Pine Ridge Apartments on March 21, 2013. Upon review, we disagree.

**{¶24}** Regarding this assignment, appellant was charged with trafficking in heroin, in violation of R.C. 2925.03, which states:

**{¶25}** "(A) No person shall knowingly do any of the following:

**{¶26}** "(1) Sell or offer to sell a controlled substance or a controlled substance analog;

**{¶27}** "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶28}** This is not a case where reliability of eye witness testimony is at issue. Rather, the testimony and evidence presented by the state at the jury trial clearly establishes and identifies appellant as the man that went to Pine Ridge Apartments to sell and deliver heroin to Patterson on the date at issue.

**{¶29}** As stated, video surveillance captured the man (later identified as appellant) wearing a red baseball cap and a black hoodie, entering the back of the apartment building. Lieutenant Hengst radioed officers that appellant was headed upstairs. Detective Dondrea and Lieutenant Bush waited on a fifth floor hallway. Detectives Parmertor and Moreland were in a fourth floor apartment with Ingram, the apartment maintenance director, watching Room 523 from a live monitor.

8

{¶30} A chase ensued after appellant took off running as a result of seeing Detective Dondrea and Lieutenant Bush through the fifth floor stairwell window. On the eighth floor, Detective Dondrea and Lieutenant Bush observed appellant on his tiptoes with his hands raised in the air. Detective Dondrea radioed other officers that the man had placed something above the ceiling tile near the exit sign by Room 801. The chase continued down the hall. The officers lost appellant in the stairwell. However, within minutes, appellant was arrested on the sixth floor. Detectives Dondrea, Parmertor, and Moreland as well as Lieutenant Bush all testified that appellant was tired, sweating, and out of breath.

{¶31} Appellant correctly points out that heroin was not found on his person at the time of his arrest. However, following his arrest, officers discovered two baggies containing heroin in the drop ceiling near Room 801 (the spot where appellant was earlier seen on his tiptoes with his hands raised in the air during the police chase.)

{¶32} Appellant also correctly points out that he was not wearing a red baseball cap and a black hoodie at the time of his arrest. However, Lieutenant Bush later found the red baseball cap and the black hoodie in the drop ceiling in Patterson's fifth floor apartment. Appellant admitted putting his clothing above the ceiling tile in Patterson's apartment.

{¶33} Also, appellant told authorities he went to the apartment complex to buy marijuana from Patterson and to visit a girl named "Keisha." However, when questioned, appellant provided the officers with not one, but two room numbers that did not exist in the apartment building.

**{¶34}** In addition, Lieutenant Hengst took a picture of appellant and showed it to Patterson. Patterson identified the man in the photo as "ATL," his heroin supplier. Also, Lieutenant Hengst used his own phone and called the number that Patterson used to order the heroin. Appellant's phone rang and Lieutenant Hengst's number displayed on appellant's phone.

**{¶35}** Finally, Williams, appellant's live-in girlfriend, consented to a search of their home where contraband was later found, including heroin, digital scales, and cash in the couples' bedroom. Williams also told police that appellant went to Pine Ridge Apartments to sell heroin.

**{¶36}** Pursuant to *Schlee, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that appellant was the heroin trafficker and that the elements of R.C. 2925.03(A)(1) and (2) were proven. Therefore, the trial court did not err in overruling appellant's Crim.R. 29 motion.

**{¶37}** Appellant's first assignment of error is without merit.

**{¶38}** In his second assignment of error, appellant contends he was denied effective assistance and a fair trial because his trial counsel's legal service fell below the standard of reasonable representation.

**{¶39}** With respect to an ineffective assistance of counsel claim, this court stated in *State v. Henry*, 11th Dist. Lake No. 2007-L-142, 2009-Ohio-1138, ¶50-52:[3]

**{¶40}** "Preliminarily, we note that *Strickland v. Washington* (1984), 466 U.S. 668, 687 * * * states:

**{¶41}** "'(a) convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction (* * *) has two components. First, the

---

3. *See also State v. Peoples*, 11th Dist. Lake No. 2005-L-158, 2010-Ohio-2523, ¶17-30.

defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction (* * *) resulted from a breakdown in the adversary process that renders the result unreliable.'

{¶42} "'(* * *) When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Id. at 687-688. *State v. Bradley* (1989), 42 Ohio St.3d 136, 142 * * *, quoting *Strickland*, supra, at 694, states: '(t)o warrant reversal, "(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" (Parallel citations omitted.)

{¶43} "Trial tactics (including a failure to object) do not substantiate a claim of ineffective assistance of counsel." *Henry, supra,* at ¶78.

{¶44} In the case at bar, appellant alleges his trial counsel was ineffective for failing to challenge the search of his home. However, the record before us reveals that Williams, appellant's live-in girlfriend, voluntarily consented to the search **where** heroin, digital scales, and cash were found inside a shoe box underneath the couples' bed. Appellant concedes that Williams had authority to consent to the search. Nevertheless,

11

appellant maintains his trial counsel should have challenged Williams' consent with a motion to suppress on the basis that it was not intelligent and voluntary because it was given at gunpoint. At oral arguments, appellant's counsel raised the issue of standing and surmised that Williams' consent may have resulted from police coercion. The record before us, however, does not substantiate such a claim.

**{¶45}** Pursuant to the Fourth Amendment to the United States Constitution, a co-occupier of a residence, like appellant in the instant matter, has **standing** to object to a search of the premises. *State v. Bailey*, 6th Dist. Lucas No. 7965, 1975 Ohio App. LEXIS 8331, *4 (Nov. 14, 1975). However, this case, like *Bailey*, involves the law and factual issues pertaining to third-party consent. *Id.* "A joint occupant [like Williams in the case at bar] may voluntarily give consent to a search of the premises and effects. The common authority or other sufficient relationship to the premises or effects is valid as against the absent, non-consenting person with whom that authority is shared." *Id.*, citing *United State v. Matlock*, 415 U.S. 164 (1974); *Frazier v. Cupp*, 394 U.S. 731 (1969); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *White v. United States*, 444 F.2d. 724 (10th Cir.1991); *State v. McCarthy*, 26 Ohio St.2d 87 (1971).

**{¶46}** "The decision whether this third-party consent was voluntary or was the produc[t] of duress or coercion however expressed is a question for the trier of the facts determined from the totality of all the circumstances. *See Schneckloth v. Bustamonte*, *supra*; *State v. Wingard* (1974), 40 Ohio App.2d 236. Where the decision is supported by substantial evidence it will not be reversed by an appellate court, *State v. Wingard*, *supra*; *Burge v. United States* (1964), 332 F.2d 171." *Bailey, supra,* at *5.

**{¶47}** "A search conducted pursuant to a valid consent is constitutionally permissible." *Bainbridge v. Kaseda*, 11th Dist. Geauga No. 2007-G-2797, 2008-Ohio-2136, ¶28, citing *Bustamonte*, *supra,* at 219. As stated, "the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary." *Kaseda* at ¶28, citing *State v. McConnell,* 5th Dist. Stark No. 2002CA00048, 2002-Ohio-5300, ¶8. "The state has the burden to prove consent was freely and voluntarily given by clear and convincing evidence." *Kaseda* at ¶28, citing *State v. Robinette,* 80 Ohio St.3d 234, 243 (1997).

**{¶48}** This court has also held that "[w]hether a consent to search was voluntary or was the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the circumstances." *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶32. "Relevant factors for the trial court to consider in determining whether a consent was voluntary include the following: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a 'newcomer to the law'; and (7) the suspect's education and intelligence." *Id.* at ¶33. (Citations omitted.)

**{¶49}** "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of trial would have differed if the motion had been filed or pursued.'" *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-

5651, ¶38, quoting *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, ¶15.

{¶50} At the time of the jury trial, Williams was a 32-year-old mother of five. She is a high school graduate and is employed as a home health aide. There was competent, credible evidence that Williams' consent to search was voluntary and intelligent. Her repeated cooperation throughout the proceedings demonstrates that the success of a suppression motion/hearing was not a reasonable probability. Williams herself testified at the trial, in which she was subject to cross-examination, that she consented to the search. Her detention outside the apartment complex (while police were chasing after appellant inside) was brief and is not alleged to have been unlawful. There were no police threats, force, promises, or coercive behavior.

{¶51} As stated, appellant left Williams in the Cadillac while he went into the building. Officer Mino, dressed in a police uniform with a visible gun, ordered Williams out of the vehicle. Williams was initially shocked. However, Officer Mino testified that he calmed her down and explained to her what the police were doing inside the apartment building. Williams was never under arrest. Williams was told at the scene that she did not have to provide consent for the search. However, after calming down and listening to Officer Mino's explanation, Williams consented to a search of her and appellant's home. She also consented again later at the station in front of other officers. Williams signed a consent to search form. She cooperated with police by providing directions and a key to their home. Williams also voluntarily went to the police station several days after the incident to give a statement.

14

{¶52} Upon consideration, there is no reasonable probability the result of the trial would have differed if a motion to suppress had been filed or pursued. *Weimer, supra*, at ¶38. We therefore cannot conclude that appellant was prejudiced by any alleged deficient conduct on the part of his trial counsel.

{¶53} Appellant's second assignment of error is without merit.

{¶54} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.