**The STATE of Ohio, Appellee,**

**v.**

**JENKINS, Appellant.**

[Cite as *State v. Jenkins* (1995), 104 Ohio App.3d 265.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940840.

Decided June 21, 1995.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Larry Keller,* for appellant.

HILDEBRANDT, Judge.

Defendant-appellant Byron Jenkins appeals from the judgment of the Hamilton County Court of Common Pleas convicting him, following his plea of no contest, of trafficking in marijuana, in violation of R.C. 2925.03(A)(2), and of tampering with evidence, in violation of R.C. 2921.12. Appellant advances one assignment of error, claiming that the court erred in overruling his motion to suppress evidence gained in a warrantless entry and search of his home. Finding the assignment to have merit, we reverse the judgment of the court below.[1]

The transcript of the hearing on the appellant's motion to suppress discloses that prior to February 7, 1994, Detective John Cook of the Sharonville Police Department received information from an informant alleging that the appellant was selling marijuana. On that date, Cook received a telephone call from a person who identified himself as a resident of the apartment house in which appellant resided. The caller reported that he smelled the odor of burning marijuana emanating from appellant's apartment. Further, the caller gave Cook the license plate numbers of persons allegedly present in appellant's apartment. Cook verified that the license plates were issued to individuals who had been convicted of drug offenses. The caller also stated that he heard one of the occupants state the intention to "weigh this up." Cook deduced that the appellant was preparing marijuana for sale.

Armed with the above knowledge, Cook went to appellant's apartment house with the intention of talking to the appellant concerning these allegations.[2] Upon arriving at the appellant's apartment house, Cook was met by a person who identified himself as the caller. The person showed Cook which apartment was occupied by the appellant and Cook knocked on the door.

Appellant answered Cook's knock by peeking through a window in the door after lifting the opaque shade that covered it. Cook was wearing civilian clothes. He then identified himself as a police officer and asked if he could enter.[3] Appellant stated that he did not know Cook and that he would not admit him.

Appellant left the door and the shade covered the window. Cook testified that he then believed that appellant had something to hide. Cook further testified that before the shade obscured his view, he observed the appellant take a few

---

1. We have *sua sponte* removed this cause from the accelerated calendar.

2. This procedure is described in the record by Detective Cook as a "knock and talk." The purpose of this procedure is to gain access to a suspected drug dealer when law enforcement officers lack probable cause to obtain a search warrant.

3. Cook contended during the suppression hearing that he displayed his badge to the appellant. Appellant disputes this.

steps and discerned that appellant was running. Cook suspected that appellant was going to destroy drugs and he kicked in the door. Cook pursued appellant into a bathroom where he caught him flushing marijuana down a toilet.

Armed with these additional facts, Cook finally sought out a magistrate and obtained a warrant to search the remainder of appellant's apartment. The execution of the search warrant yielded an additional quantity of marijuana. Appellant was indicted for drug trafficking by preparing drugs for transportation. Appellant was also indicted for tampering with evidence as a result of flushing contraband down the toilet.[4]

The trial court overruled appellant's motion to suppress and appellant was convicted of the charged offenses after his plea of no contest. Appellant was sentenced to a period of incarceration, which was suspended. He was placed upon four years of probation on the condition that he complete a drug rehabilitation program. Appellant now brings this timely appeal.

In his sole assignment of error, appellant urges that the trial court erred by overruling his motion to suppress the evidence derived from the warrantless entry and subsequent searches of his home. We find the assignment to be persuasive.

The principal protection against uncalled-for intrusions into private dwellings is the rule that "entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639; *Johnson v. United States* (1948), 333 U.S. 10, 13–15, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 [440–441]." *Steagald v. United States* (1981), 451 U.S. 204, 211, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38, 45.

One carefully delineated exception to the warrant requirement permits warrantless felony arrests in the home if both probable cause to arrest and exigent circumstances are present. *Payton v. New York, supra,* 445 U.S. at 583–590, 100 S.Ct. at 1378–1382, 63 L.Ed.2d at 649–653.[5] "Before agents of the

---

**4.** We note that the suppression of evidence gained from the warrantless entry would also reach evidence gained from the subsequent warranted search as it would "be derivative of an illegality, or 'fruit of the poisonous tree.' *Nardone v. United States* (1939), 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307." *State v. Carter* (1994), 69 Ohio St.3d 57, 67, 630 N.E.2d 355, 363.

**5.** In *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749–750, 104 S.Ct. 2091, 2097–2098, 80 L.Ed.2d 732, 743, the high court cautioned as follows:

"[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see, *e.g., United States v. Santana,* 427 U.S. 38, 42–43 [96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300, 305–306] (1976) (hot pursuit of a fleeing felon); *Warden v.*

government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin* (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (citing *Payton v. New York, supra,* 445 U.S. at 586, 100 S.Ct. at 1380, 63 L.Ed.2d at 650–651).

To begin our analysis of this assignment, we will assume, without deciding, that after Cook met the resident at appellant's apartment house, he possessed sufficient probable cause to obtain a search warrant for appellant's residence.[6] We base this assumption upon the totality of the circumstances present in this case. See *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. At that time, however, no exigent circumstances existed to justify a warrantless entry into appellant's home.

■ It was not until after Cook knocked and was refused entry that he suspected that appellant was running to destroy evidence of drugs and that exigent circumstances, if any, arose. Those circumstances, however, were the direct result of Cook's actions.

Neither the Supreme Court of the United States nor the Supreme Court of Ohio has specifically addressed the issue of whether exigent circumstances that are the direct or proximate result of police activity can pass constitutional muster. The issue of police-initiated exigent circumstances has been addressed by Ohio and federal intermediate appellate courts.

In *United State v. Timberlake* (C.A.D.C.1990), 896 F.2d 592, the District of Columbia Metropolitan Police Department received a telephone call to be on the lookout for an African–American suspect who sold drugs to an undercover police officer. The caller identified the apartment building where the suspect resided. Three officers, dressed in plain clothes, responded to the apartment building and observed two males playfully spraying an aerosol can outside the door of the apartment in which the defendant resided with his mother.[7] The door to the apartment was ajar and the officers observed several young men inside, two of whom resembled the suspect for whom they were looking.

---

*Hayden,* 387 U.S. 294, 298–299] 87 S.Ct. 1642, 1645–1646, 18 L.Ed.2d 782, 787–788] (1967) (same); *Schmerber v. California,* 384 U.S. 757, 770–771 [86 S.Ct. 1826, 1835–1836, 16 L.Ed.2d 908, 919–920] (1966) (destruction of evidence); *Michigan v. Tyler,* 436 U.S. 499 [509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498] (1978) (ongoing fire), and has actually applied only the 'hot pursuit' doctrine to arrests in the home, see *Santana, supra."*

6. Cook testified below that prior to appellant's refusal to admit him, he was of the opinion that he lacked probable cause to enter the appellant's apartment.

7. The apartment was leased by the defendant's mother.

The two men in the hall returned to the apartment and closed the door. One of the officers suspected that he smelled the odor of phencyclidine ("PCP"). Without making any effort to secure a warrant, the officers knocked on the defendant's door and announced that they were police officers. Seconds later, someone opened the door and the officers forced their way inside. One of the officers, on a hunch, searched the defendant's bedroom and recovered a handgun.

Thereafter, the officers obtained the defendant's mother's signature on a written form that indicated her consent to a search of the apartment. The subsequent search uncovered cocaine, PCP and marijuana. The following day, some officers returned to the apartment with a search warrant and recovered a second handgun.

The defendant moved to suppress the evidence described above. In rejecting the motion, the district court reasoned that exigent circumstances justified the search. A panel of the court of appeals, including now Supreme Court Associate Justice Ginsburg, reversed, holding that even if the defendant's mother consented to the officers' search of her home, the consent was tainted by the earlier illegal entry.[8] The search was no more valid than the initial entry. *Id.,* 896 F.2d at 595.

The court specifically rejected the district court's finding of exigent circumstances because the record failed to support the officers' contention that the destruction of evidence was imminent or that there was a threat to life because the alleged PCP might explode. *Id.* at 596–597. The court recognized that once the officers knocked on the defendant's door and announced "police," those inside became aware of their presence. The court concluded that " 'police officers cannot deliberately create exigent circumstances to justify a warrantless entry into a private dwelling.' " *Id.* at 597, quoting *United States v. Socey* (C.A.D.C. 1988), 846 F.2d 1439, 1448.

In *United States v. Munoz–Guerra* (C.A.5, 1986), 788 F.2d 295, the Mission, Texas, police department received an anonymous call to its "Crime Stoppers" telephone line. The caller stated that she had seen approximately three hundred pounds of marijuana, money and a white powder inside a briefcase, at a condominium, and gave the address. The caller gave the description of a pickup truck that was in the driveway and of the occupant, who she alleged was armed.

Upon arriving at the condominium, officers observed the truck and a man fitting the caller's description. Agents of the Drug Enforcement Administration were summoned to aid in surveiling the condominium and saw contraband in the residence.

---

8. The court reasoned that the officers' entry was illegal because they lacked either a warrant or exigent circumstances.

Answering the agents' knock on a glass patio door, defendant Munoz–Guerra was ordered to place his hands on the glass and open the door. The door was locked and defendant indicated that he would have to go to another room to obtain a key. Fearing that the defendant would obtain a firearm or destroy evidence, the agents kicked in the door. Once inside, the agents performed a protective sweep of the premises, which yielded marijuana, cocaine and firearms.

The district court overruled the defendant's motion to suppress, finding probable cause to search and reasoning that the warrantless search was reasonable in light of the exigent circumstances which prompted the agents to break into the residence.

The United States Court of Appeals for the Fifth Circuit rejected the ruling below, noting that it had previously held that the government could not justify a warrantless search on the basis of exigent circumstances of its own making. *Id.* at 298 (citing *United States v. Thompson* [C.A.5, 1983], 700 F.2d 944, 950). The court also stressed that it had consistently held that the mere presence of firearms or destructible contraband does not create exigent circumstances. *Id.*

Finally, the court explained that in the *Munoz–Guerra* case, it would have been possible to covertly secure the condominium from the outside while a search warrant was obtained from a neutral magistrate.

In *State v. Heaven* (1990), 65 Ohio App.3d 832, 585 N.E.2d 521, relying on information received from an informant of "questionable reliability" that cocaine was located within, the police pounded on the defendant's motel room door. The defendant's wife emerged and the door closed behind her. The officers heard a toilet flushing and "swift movement." Fearing the destruction of evidence, the officers again pounded on the door and ordered the defendant to come out with his hands behind his head. The defendant complied, clad only in his underwear. The subsequent search yielded the sought-after drug.

On appeal, the court reversed the conviction on the ground that the police had ordered the defendant from his motel room and arrested him without probable cause. *Id.* at 834–835, 585 N.E.2d at 523.

■ We find the reasoning in these authorities to be compelling and dispositive of the cause *sub judice.* A warrantless entry of a home by law enforcement authorities, even based upon probable cause, cannot be justified by exigent circumstances of their own making.

Parenthetically, when Detective Cook arrived at the appellant's apartment house and was met by the concerned resident, he could have covertly secured the location while he took the resident before a neutral magistrate where, under oath, the resident could have related those matters that he had observed and which we have related above.

Accordingly, we sustain the appellant's assignment of error. The judgment of the court of common pleas is reversed and this cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., and DOAN, J., concur.