The STATE of Ohio

v.

SAMARGHANDI et al.■

Hamilton County Municipal Court.

Nos. C95–CRB–29422, C95–CRB–29424 and C95–CRB–29425.

Decided Feb. 18, 1997.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Pamela Sears,* Assistant Prosecuting Attorney, for plaintiff.

*Dinsmore & Shohl* and *Michael E. Finucane,* for defendants Majid and Suzanne Samarghandi.

---

NADINE ALLEN, Judge.

## I.   Procedural Posture

On February 13, 1997, this matter came on for a decision on a motion to suppress. This court granted all three motions to suppress all of the evidence obtained, pursuant to the arrests of the defendants.

This judgment was entered on February 13, 1997 for the following reasons.

## II.   Statement of Facts

On August 13, 1995, on a hot afternoon, the Samarghandis had an argument at their home. Mrs. Samarghandi, upset by the argument, decided to drive to calm herself down. However, she was unable to find her car keys. She mistakenly believed that her husband had them and that he would not return them.

In an effort to pressure her husband to return the keys, Mrs. Samarghandi called 911. Mrs. Samarghandi told the dispatcher about the car keys and, when questioned, said no violence or weapons were involved. Within two minutes of her first call, Mrs. Samarghandi called 911 back and said that the argument was over and that she had no need for any official response. Both responding deputies heard the contents of Mrs. Samarghandi's calls in their radio runs.

When she saw Hamilton County Sheriff's Deputy Canada arrive, Mrs. Samarghandi went outside to the driveway to meet him. The deputy verified that Mrs. Samarghandi made the initial 911 call and that there had not been any violence, weapons, or threats of violence. Mrs. Samarghandi explained that she made the

second 911 call to cancel her first call. Deputy Canada said he could not leave because of the "law," even though Mrs. Samarghandi did not show signs of any injury and there was nothing unusual about her clothes. But she appeared to be crying. Deputy Canada stated that Mrs. Samarghandi wanted him to get her keys back so she could leave the house.

As Deputy Canada made his way into the residence, he told Mrs. Samarghandi that he needed to talk to her husband because of their "policy" to check out domestic situations. Throughout this time, Mr. Samarghandi remained in his home.

Deputy Canada entered the dwelling, where he first encountered Mr. Samarghandi. Mr. Samarghandi repeatedly and forcefully said to the deputy, "I want you to leave my house. You have no right to be here. I don't have to answer your questions, so get the hell out of my residence." The deputy responded that he wanted to talk to Mr. Samarghandi and that he was not going anywhere. Eventually, the deputy continued on into the kitchen. As Mr. Samarghandi stood there in his kitchen, he showed no signs of any injury. Mr. Samarghandi was at the sink cleaning vegetables with a knife. The deputy did not fear for either his safety or Mrs. Samarghandi's safety at this time.

The parties vehemently dispute what happened next. Deputy Canada claims that Mrs. Samarghandi wanted him to escort her into the residence to get her keys, and that she was tired of her husband's "verbal abuse and what he would do if she left him." Mrs. Samarghandi stated that Mr. Samarghandi had neither threatened to harm her nor physically harmed her during their marriage.

When Mr. Samarghandi refused to cooperate in Deputy Canada's "domestic investigation," Deputy Canada advised Mr. Samarghandi that he would be placed under arrest for obstructing official business. Mr. Samarghandi's response was to shake his finger at the deputy's chest and demand that the officer leave his home.

By this point, Mrs. Samarghandi had requested that Deputy Canada leave the residence. However, the deputy believed that he now had a right to arrest Mr. Samarghandi for obstructing official business and had called for backup assistance to make this arrest, even though any perceived consent was withdrawn. The second deputy, Deputy Tolle, then entered the home. Neither of the defendants gave Deputy Tolle consent to enter. Deputy Tolle asked Mr. Samarghandi for identification and Mr. Samarghandi refused. Deputy Tolle then forcefully began to arrest Mr. Samarghandi by throwing him on top of the table, causing his glasses to fall off his face. At the sight of this, Mrs. Samarghandi placed her hand on Tolle's chest and pushed it. As both officers were placing Mr. Samarghandi under physical arrest, Mrs. Samarghandi also touched Deputy Canada's upper shoulder. Neither officer was injured in this incident.

Deputy Canada knew that, without Mrs. Samarghandi's consent, he had no authority to enter their home. Mr. Samarghandi never gave consent for either deputy to enter his home.

After this scene in the kitchen, Mrs. Samarghandi was placed under arrest. She did not resist her own arrest. Mr. Samarghandi was indicted by the grand jury for a misdemeanor offense of resisting arrest in violation of R.C. 2921.33(A). Mrs. Samarghandi was indicted for misdemeanors of resisting arrest and obstructing official business in violation of R.C. 2921.33(A) and 2921.31, respectively.

### III.   Conclusions of Law

The state failed to prove that the deputies had a valid basis to obtain consent to enter and to remain in the defendants' home, that exigent circumstances existed, or that any official duty existed to investigate the domestic situation, and, finally, that either arrest was lawful.

This analysis must commence with the constitutional guarantee of every person to be safeguarded from unreasonable intrusions into the privacy of the home. The deputies had no warrant for the defendants' arrest. Thus, absent a valid basis for consent to enter or exigent circumstances, the subsequent arrests of the defendants must be suppressed. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860.

Exceptions to the broad protections of the sanctity of the home found in the Fourth Amendment arise in only very limited circumstances. In the First District case of *State v. Jenkins* (1995), 104 Ohio App.3d 265, 268, 661 N.E.2d 806, 808, the court stated: "The principal protection against uncalled-for intrusions into private dwellings is the rule that 'entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. * * *'" The *Jenkins* court cautioned as follows: "'[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. * * *'" *Id.* at 268, 661 N.E.2d at 808, fn. 5, quoting *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749–750, 104 S.Ct. 2091, 2097–2098, 80 L.Ed.2d 732, 743. Indeed, the court has recognized only a few such emergency conditions, generally limited to felony investigations. *Elyria v. Tress* (1991), 73 Ohio App.3d 5, 595 N.E.2d 1031. Herein, unless the consent requested was based upon the deputy's reasonable belief and probable cause, it was not valid. Therefore, the next issue is, was the consent valid even if it was obtained prior to entry into the defendants' residence? This court concludes it was not. At most, Deputy Canada had information that Mrs. Samarghandi wanted him to escort her solely to get keys, no violence or threat of violence then or in the past had occurred, Mrs. Samarghandi was tired of "verbal abuse," Mrs. Samarghandi appeared to be crying, she was not injured, and she

had made the second 911 call to cancel the first 911 call. In reaching this conclusion, this court considered whether Mr. Samarghandi committed a crime in refusing to return Mrs. Samarghandi's keys and whether using nonviolent verbal abuse is criminal behavior. Did this authorize Deputy Canada to request consent in order to validate an official investigation of domestic violence by Mr. Samarghandi? It is not a crime for one spouse to argue, use verbal abuse, and refuse to turn over keys to another spouse.

▮ Any authority or duty that Deputy Canada had is controlled by R.C. 2935.032, which mandates that an officer investigate and arrest when circumstances show that a felonious domestic violence has occurred. Clearly, there was no felonious domestic violence in the instant case.

Lacking a felony domestic violence, an officer is guided by any written policy of the police department that authorizes warrantless arrests for misdemeanor domestic violences. The state produced no written policy for this authority. Under R.C. 2935.032(A)(2)(c), the deputy had to have a reasonable basis to believe that a domestic violence had occurred prior to conducting separate interviews. This court does not find that a radio run for a domestic "situation" is tantamount to a domestic violence situation. Thus, no reasonable basis existed to validate the request for consent to enter the Samarghandi home, whether it was granted or not.

▮ The deputy's entry into the defendants' home was as a Good Samaritan, at best. Absent probable cause or exigent circumstances, any perceived consent or actual consent could be withdrawn at any time. Mr. Samarghandi repeatedly instructed the deputies to "get out of my house." Mrs. Samarghandi subsequently did the same. Absent was an independent crime committed while the deputies were inside the defendants' home, despite evidence that when the backup deputy arrived inside the home, the defendants were demanding that Deputy Canada leave, and Mr. Samarghandi was poking the deputy's chest and ordering him to leave. This was not criminal behavior by defendants. That is because the defendants' had a constitutionally protected privilege not to permit a police office to enter or remain in their home without a warrant. *State v. Neftzer* (1992), 62 Ohio Misc.2d 384, 598 N.E.2d 938.

This is especially so when that deputy's status is as a mere Good Samaritan. The minimal, noninjurious physical contact between these two deputies and the defendants was for the purpose of evicting the deputies, without lawful authority, from remaining in the defendants' home, and for preventing the unlawful arrest of Mr. Samarghandi. Thus, Mrs. Samarghandi's arrest for hampering the unlawful arrest of her husband is also fatally tainted as invalid, for the reasons cited herein. As set forth in *State v. Anderson* (1976), 46 Ohio St.2d 219, 75

O.O.2d 248, 346 N.E.2d 776, "a police officer may lawfully arrest a person who interferes with the lawful arrest of another." Concomitantly, the police may not lawfully arrest a person who interferes with the *unlawful* arrest of another. *State v. Collins* (1993), 88 Ohio App.3d 291, 294–295, 623 N.E.2d 1269, 1270–1272.

That was the situation when the deputies encountered the defendants. The two deputies lacked a reasonable basis to believe that, first, Mr. Samarghandi committed any crime and, second, that Mrs. Samarghandi's interference with Mr. Samarghandi's unlawful arrest was illegal. The test is set forth in *State v. Sansalone* (1991), 71 Ohio App.3d 284, 593 N.E.2d 390, and *Coffel v. Taylor* (S.D.1978), 8 O.O.3d 253. Would a reasonable police officer believe that the defendants' language and conduct were a criminal offense? For the reasons set forth, that basis cannot be reasonably found.

## IV. Conclusion

The Samarghandis' motion to suppress is hereby granted. The state failed to prove, with clear and positive evidence, that its deputy obtained valid consent to enter the Samarghandis' home to perform a search or arrest without a warrant. It also failed to prove, by a preponderance of the evidence, that any exigent circumstances existed to justify the warrantless search and arrest inside the home.

Because of the evidence obtained after the deputies' unlawful entry into the Samarghandis' home, all of its evidence must be suppressed, as it is in violation of the Fourth Amendment.

*Judgment accordingly.*