Defendant-appellant, James J. Bramante, appeals the decision of the trial court denying his motion to suppress evidence. For the reasons set forth below, we reverse.
On November 5, 1996, North Royalton patrol officers Richard Breyley and Phillip Centorbi were dispatched to the Deercreek Apartments in response to a citizen's complaint that someone was smoking marijuana in Apartment 103, where appellant and his wife lived. They subsequently cited appellant for drug abuse in violation of North Royalton Codified Ordinance 624.03, a minor misdemeanor, and possession of drug paraphernalia in violation of North Royalton Codified Ordinance 624.15, a second degree misdemeanor.
Appellant pled not guilty to the charges and on March 7, 1997, filed a motion to suppress evidence illegally obtained during a search of his apartment. On May 5, 1997, the trial court held a hearing on appellant's motion to suppress.
At the suppression hearing, Patrolman Breyley testified that upon arriving at the Deercreek Apartments at approximately 9:00 p.m. on November 5, 1996, he and Patrolman Centorbi randomly rang buzzers until they were "buzzed" into the building. Breyley testified that the officers walked down the common hallway of the building to Apartment 103. Through his police training, Breyley recognized the smell of marijuana coming from Apartment 103, so he knocked on the apartment door. Breyley testified that he did not identify himself as a police officer when he knocked on the door because he suspected that whoever was smoking marijuana in Apartment 103 would not open the door for him if they knew he was a police officer.
Both Breyley and Centorbi were wearing their police uniforms. Breyley testified that there was a peephole in the door to Apartment 103 but when he knocked on the door, he stood off to the right side of the door, "just out of the view of the people," so that he would not be observed. Patrolman Centorbi stood off to the left side of the door.
According to Breyley, after he knocked on the door, a male inside the apartment asked who it was. Breyley responded, "a neighbor." Breyley testified that when appellant opened the door, the officers were standing next to each other in front of the door. Breyley "told [appellant] we were going to come in and talk to him about the drug use, " and the officers stepped into the apartment, while appellant stepped back. Breyley testified that appellant did not invite the officers into the apartment but never told them they could not come in nor did anything to prevent them from coming in.
In the apartment, Breyley saw a white wooden rectangular box, approximately 10 inches long x 6 inches wide x 3 inches deep, with a sliding lid on it, located on the floor in front of a television set. The box was closed and there was $350 cash on top of the box. Next to the box, Breyley saw an ashtray that contained the remnants of a marijuana joint (a "roach")
According to Breyley, the officers told appellant and his wife, Melissa Bramante, that they suspected there were more drugs and drug paraphernalia in the apartment and they wanted appellant and his wife to produce them. Appellant's wife went to the kitchen cupboards, pulled out a pipe commonly used for smoking marijuana and gave it to Officer Centorbi.
Breyley testified that appellant and his wife questioned the officers regarding their right to search the apartment. In response, Breyley told them that the officers would search the apartment because they had already found drugs in the apartment, but they wanted appellant and his wife's cooperation with the search. Upon obtaining the officer's permission, appellant telephoned a relative of his who worked for the Cleveland Police Department. Breyley testified that after the phone call, appellant and his wife consented to the search.
Patrolman Phillip Centorbi testified at the suppression hearing that as he and Breyley walked down the hall of the Deercreek Apartments, the smell of marijuana got progressively stronger as they approached Apartment 103. According to Centorbi, the smell was so strong that he knew immediately that someone was smoking marijuana inside the apartment.
Centorbi testified that both officers stood directly in front of the peephole when Breyley knocked on the door. In response to the knock, someone from inside the apartment asked who it was, and Breyley responded, "a neighbor." According to Centorbi, if they had answered "police, " the evidence would likely have been destroyed.
Centorbi testified that when appellant opened the door, the officers stepped forward. Centorbi testified that appellant did not invite the officers in, but did not attempt to close the door on them. Centorbi also testified that appellant would not have been able to shut the door if he had tried to do so because the officers were in the way. According to Centorbi, neither appellant nor his wife ever told the officers that they could not be in the apartment or told them that they had to leave.
Centorbi testified that when the officers walked through the apartment door, he looked to his right and observed an ashtray containing more than one roach. Centorbi testified that the officers then asked if there was any other contraband in the apartment and appellant's wife voluntarily produced a pipe from the kitchen cupboards. According to Centorbi, the officers then asked appellant and his wife if they could search the apartment for more contraband. After appellant concluded his telephone conversation with his relative, he told the officers they could search the apartment.
Centorbi testified that he searched the apartment but did not find any other contraband. The officers issued misdemeanor citations for drug abuse and possession of drug paraphernalia to both appellant and his wife, but did not arrest them. The charges against appellant's wife were subsequently dismissed.
Appellant called one witness at the suppression hearing. Appellant's wife, Melissa Bramante, testified that there was a knock on their door at approximately 9:00 p.m. on November 5, 1996. According to Bramante, appellant went to the door and looked through the peephole but did not see anyone. He then asked, "who is it?" Bramante, who was laying on the couch, did not hear the answer
According to Bramante, appellant then opened the door only far enough to stick his head out to see who it was. Within two or three seconds, the officers pushed themselves into the apartment and shut the door, while appellant kept saying, "whoa, whoa, whoa."
Bramante then stood up off the couch, amazed to see police officers in the apartment. According to Bramante, the officers repeatedly asked her and appellant where the marijuana was. Appellant then walked over to the television set, picked up the white rectangular box and handed it to one of the officers. The officers then opened the box, in which they found two joints, six or seven roaches and some rolling paper.
Bramante testified that the officers then asked her and appellant if they had any other drugs. Bramante testified that she pulled a pipe out of the kitchen cupboards, gave it to one of the officers, and said, "that's all we have." Officer Breyley then told Bramante and appellant, "if you don't tell us where anything else is, were going to get it ourselves." According to Bramante, the officers threatened to bring in a "drug dog."
Bramante testified that she told the officers she wanted to know what her rights were in this situation. According to Bramante, the officers responded, "you don't have any rights; you violated your rights when you gave us the box with the marijuana in it."
Bramante denied that there was any marijuana odor emanating from the apartment when the officers arrived. She admitted that appellant and an unnamed friend had smoked marijuana at around 8:00 p.m. that evening while they were playing Saga TV, but testified that there were candles burning in the apartment and the patio door was open so there was no longer an odor in the apartment.
Bramante also denied that she and appellant gave the officers verbal consent to either enter or search the apartment. Bramante testified that she and appellant had no choice but to let the officers in the apartment; the officers were in and the door was shut by the time she and appellant realized what was happening.
Finally, Bramante denied that the officers could have seen the rectangular box or the ashtray when they were standing in the hallway of the apartment due to the arrangement of furniture in the apartment.
On rebuttal, Officer Centorbi testified that when appellant responded to the knock, he opened the door two to three feet wide. Officer Centorbi admitted, however, that the officers could not observe the ashtray and the marijuana roaches from the doorway of the apartment, but that "we had to take a step in" in order to see them.
On January 2, 1998, the trial court denied appellant's motion to suppress. In denying the motion, the trial court found that the odor of marijuana emanating from Apartment 103 provided probable cause for the officers to knock on the door. The trial court also found that appellant voluntarily opened the door, thereby giving his initial consent to the intrusion, and the officers, who stood at the doorway with a lawful right of access, observed the rectangular box and ashtray in plain view. The trial court concluded that due to the exigent circumstances, the officers were therefore justified in entering appellant's apartment to confiscate the contraband and issue citations.
Appellant subsequently pled no contest to the charges. The trial court found appellant guilty of both charges and sentenced him to a $100 fine and costs on count one and a $250 fine, of which $200 was suspended, on count two. The sentence was stayed pending disposition of appellants appeal.
Appellant assigns one assignment of error for our review:
 I. THE TRIAL COURT WAS CLEARLY ERRONEOUS IN OVERRULING DEFENDANTS MOTION TO SUPPRESS EVIDENCE SEIZED IN THE WARRANTLESS SEARCH OF DEFENDANTS APARTMENT, IN VIOLATION OF THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION FOURTEEN, OF THE OHIO CONSTITUTION, WHERE THERE WAS NO CONSENT, NC EXIGENT CIRCUMSTANCES AND THE REQUIREMENTS FOR A PLAIN VIEW EXCEPTION WERE NOT MET.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure the right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause. A warrantless search or seizure effected on premises in which an individual has a reasonable expectation of privacy is per se unreasonable unless it falls within one of the few recognized exceptions to the warrant requirement. Payton v. New York (1980),445 U.S. 573, 586-587. When a warrantless search has been conducted, the state bears the burden of establishing that the search falls within one of the exceptions to the warrant requirement. Coolidge v. New Hampshire (1971), 403 U.S. 443,454-455; State v. Kessler (1978), 53 Ohio St.2d 204,207.
In reviewing the trial court's ruling on a motion to suppress. we accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford
(1994), 93 Ohio App.3d 586, 592. Then, accepting these facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
Appellant contends that the trial court should have granted his motion to suppress because he did not consent to the warrantless search of his apartment, there were no exigent circumstances to justify the search and the requirements of the plain view doctrine were not met in this case. Appellee, on the other hand, contends that the warrantless search of appellants apartment was constitutionally valid because appellant consented to the search, the officers had probable cause to search the apartment and the contraband was in plain view.
One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to voluntary consent. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given. State v. Posey (1988), 40 Ohio St.3d 420,427; State v. Retherford (1994), 93 Ohio App.3d 586,596.
The trial court found that appellant gave his initial consent to the search when he voluntarily opened his apartment door after the officers knocked on the door. The trial court further found that because appellant did not try to close the door on the officers or take any other physical action to bar their entry, he did not limit the scope of his consent and the officers were therefore justified in entering the apartment. We do not agree.
"Consent obtained through deception cannot be said to have been given freely and voluntarily." State v. Pi Kappa Alpha Fraternity
(1986), 23 Ohio St.3d 141, 144. In Pi Kappa Alpha, liquor control agents were invited by a fraternity house manager to enter the fraternity house when one agent purported to be an alumnus of another chapter and stated that his brother might be interested in joining the fraternity. Once inside, the agents observed the illegal sale of alcohol.
In considering whether the manner in which the agents gained access to the interior of the fraternity house violated theFourth Amendment, the Ohio Supreme Court first determined that the fraternity house was not a commercial center of criminal activity. Id. at 143. The Supreme Court further found that the liquor control agents had expressly misrepresented their identities and the true purpose of their visit to the fraternity house manager, and that the resultant invitation extended to the agents was made for the purpose of exhibiting the fraternity house to recruit a potential member, not for the purpose of conducting illegal activity. Id. at 144. Accordingly, the Supreme Court held that the fraternity house manager had not freely and voluntarily consented to the agent's search. Id. The key factors supporting this holding were set forth in the syllabus:
 Pursuant to Section 14, Article I of the Ohio Constitution, and in the absence of any judicially recognized exception to the warrant requirement, government officers are not privileged to deceptively gain entry into the private home or office of another without a warrant, where such home or office a commercial center of criminal activity, and where the invitation to enter the private home or office was not extended by the occupant for the purpose of conducting illegal activities.
Analyzing these key factors, we find the circumstances of this case to be similar to Pi Kappa Alpha. First, there is no question that appellant's apartment was not a "commercial center of criminal activity." There is also no question that Officers Breyley and Centorbi expressly misrepresented their identities when, after they knocked on appellant's door and appellant asked who it was, Officer Breyley responded, "a neighbor."
Moreover, as in Pi Kappa Alpha, we find no relationship between appellants opening of the door and the illegal activity being conducted within the apartment. There is no evidence in the record that appellant opened the door for the purpose of inviting the officers into his apartment to smoke marijuana.
Accordingly, under the totality of the circumstances, we find that the trial court erred in finding that by opening the door, appellant gave his initial consent to the search. Appellants consent under these circumstances, obtained by deception, was not freely and voluntarily given so as to make the warrantless search of his apartment constitutionally valid.
The state argues, however, that Officers Breyley and Centorbi were justified in entering appellant's apartment and searching for contraband because after appellant opened the door to his apartment, the officers had a "clear and plain view of the contraband through the doorway of the apartment." We are not persuaded by this argument.
The warrantless seizure by a law enforcement officer of an object in plain view does not violate the Fourth Amendment if: 1) the intrusion affording the plain view is lawful; 2) the discovery of the evidence is inadvertent; and 3) the incriminating nature of the evidence is immediately apparent to the seizing authority. State v. Williams (1978), 55 Ohio St.2d 82, paragraph one of the syllabus.
The controversy in this case turns upon the first criterion of the plain view doctrine; i.e., whether the officers attained their vantage point in compliance with the Fourth Amendment. As discussed above, appellant's initial consent was not voluntary. Accordingly, because the officers' intrusion affording the plain view was not lawful, the first criterion of the plain view exception is not satisfied. Absent all three of these criteria, the plain view exception to a warrantless search and seizure is not applicable. State v. Jedrick (May 9, 1991), Cuyahoga App. No. 60276, unreported.
Moreover, contrary to the state's argument, the contraband was not visible from where the officers were standing in the hallway when appellant opened the door. Officer Centorbi testified:
 Q. Now as the door was opened, as you explained, and the Defendant Mr. Bramante was in full view, and as you — could you observe the table with the ashtray and the marijuana roaches being smoked without taking a step in or did you have to take a step in?
A. No. We had to take a step in.
 Q. Alright. And then you took one step or two steps?
 A. About one step, that was all we needed to take.
Q. And that's when you observed . . .
A. Correct.
Accordingly, even if appellant did consent to the officers' initial breach of the threshold of his apartment by opening the door, because the contraband was not in plain view of the officers from their position in the hallway, the plain view exception cannot justify the officers' subsequent entry into appellant's apartment.
The state also argues that the warrantless search of appellant's apartment was justified because the smell of marijuana coming through appellant's door gave the officers probable cause to search. Appellant asserts, however, that even if there were probable cause, there were no exigent circumstances to justify the warrantless search.
Exigent circumstances will permit a deviation from theFourth Amendment warrant requirement in the presence of probable cause to arrest or to search. State v. Robinson (1995), 103 Ohio App.3d 490,496, citing Steagald v. United States (1981), 451 U.S. 204. The odor of marijuana, standing alone, has been held to provide probable cause for warrantless searches where the officers are experienced in its detection. State v. Garcia (1986), 32 Ohio App.3d 38,39. Therefore, assuming that the odor of marijuana coming from Apartment 103 gave Officers Breyley and Centorbi, who were trained in the detection of illegal drugs, probable cause to search, we must decide whether there were exigent circumstances sufficient to justify the officers' warrantless search of appellant's apartment.
The United States Supreme Court has stated that the proper legal standard for determining whether there are exigent circumstances contemplates whether "there is hot pursuit of a fleeing felon, imminent destruction of evidence, Welsh v.Wisconsin (1984), 466 U.S. 740, the need to prevent a suspect's escape or the risk of danger to the police or to other persons inside or outside the dwelling." Minnesota v. Olsen (1990),495 U.S. 91, 100 (citations omitted). The only exigent circumstance that could possibly apply to this case is the imminent destruction of evidence.
When police officers seek to rely on the destruction of evidence exception in justifying a warrantless entry, they must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent. State v. Baker and Bakey (April 25, 1991), Cuyahoga App. Nos. 60352, 60353, unreported, citing United States v. Sangineto-Miranda (6th Cir. 1988),859 F.2d 1501, 1512. A police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a residence if he or she can demonstrate: 1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order. Id.
In this case, there is absolutely nothing in the record that would lead one to reasonably conclude that any evidence would have been destroyed in the short time it would have taken the officers to obtain a warrant. First, there is no evidence that before Officer Breyley knocked on the door, appellant was aware of the officers' presence in the hallway and, thus, inclined to destroy, conceal or dispose of the evidence. Moreover, although Officer Centorbi testified that evidence would have been destroyed if they had answered "police" in response to appellant's inquiry after Officer Breyley knocked on appellant's door, there are no facts in the record that support Officer Centorbi's statement. Furthermore, police officers cannot rely on exigent circumstances of their own making to justify the exigent circumstances exception to the warrant requirement. State v.Jenkins (1995), 104 Ohio App.3d 265, 271. Thus, even if appellant had tried to destroy evidence after the officers knocked on his door, the exigent circumstances would have been of the officers own making and, therefore, insufficient to support a warrantless entry into appellant's apartment. See Jenkins, supra. Accordingly, there are no facts to support the exigent circumstance of imminent destruction of evidence.
Moreover, the United States Supreme Court has generally limited the exigent circumstances exception to the investigation offelony offenses. In Welsh v. Wisconsin (1984), 466 U.S. 740, the United States Supreme Court discussed the exigent circumstances exception to the warrant requirement. It stated: "* * * the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."Id. at 749- 750. The court held that the gravity of the underlying offense is an important factor in determining whether an exigency exists, and stated that when the government's interest is only to arrest for a minor offense, the presumption of unreasonableness that attaches to a warrantless arrest in a private home or office is difficult to rebut. Welsh, supra,466 U.S. at 750-751; Middleburg Hts. v. Theiss (1985), 28 Ohio App.3d 1. "* * * Application of the exigent circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe only a minor offense * * * has been committed." Welsh, supra, 466 U.S. at 753.
Thus, in State v. Robinson (1995), 103 Ohio App.3d 490, the First District Court of Appeals upheld the trial courts suppression of evidence seized by officers upon a warrantless entry into the defendants home. In Robinson, two plainclothes police officers, responding to citizens complaints regarding suspicious activity at the defendant's residence, went to the defendants apartment to investigate. While in the hallway to the apartment, the officers noticed the odor of burning marijuana. One of the officers knocked at the door, and the defendant opened the door. The smell of burning marijuana escaped through the opening. When the defendant saw the officers, he attempted to shut the door, and a struggle ensued. As the officers struggled to force the door inward and the defendant strained to bar their entry, the officers heard him shout repeatedly, "Get rid of the shit * * *. Police," and saw another individual running from room to room. The officers ultimately succeeded in forcing the door open, and when they entered the apartment, they observed a package of marijuana in the defendant's shoe, which had fallen off during the struggle.
The First District Court of Appeals held that the officers warrantless, forcible entry into the defendant's apartment violated the Fourth Amendment because, among other reasons, the exigent circumstance premised upon the imminent destruction of evidence of the offense of minor-misdemeanor drug abuse was insufficient to overcome the presumption of unreasonableness that attached to the officers' warrantless entry into the defendant's apartment. The court explained:
 The odor of burning marijuana that escaped through the open door provided probable cause only as to the commission of the offense of drug abuse involving the possession of less than one hundred grams. The Ohio General Assembly has classified the offense as a minor misdemeanor, R.C. 2925.11(C)(3), subject only to a fine, R.C. 2929.21(D), and has further provided that an arrest or conviction for the offense "does not constitute a criminal record. R.C. 2925.11(D). The General Assembly has thus classified the offense in question as the most minor offense possible. Therefore, on the authority of Welsh, supra,
we hold that the exigent circumstance premised upon the imminent destruction of evidence of the offense of minor-misdemeanor drug abuse was insufficient to overcome the presumption of unreasonableness that attached to the officers' warrantless entry into [defendants] apartment.
Id. at 497.
Similar reasoning applies to this case. Because the odor of marijuana emanating from appellant's apartment gave Officers Breyley and Centorbi probable cause only as to the commission of minor-misdemeanor drug abuse in appellant's apartment, we hold that even if there were evidence of the imminent destruction of evidence, it was insufficient to support the exigent circumstances exception to the warrant requirement.
Having determined that the officers' warrantless entry into appellant's apartment cannot be justified under any recognized exception to the Fourth Amendment warrant requirement, we find that appellant's assignment of error is well-taken and his motion to suppress should have been granted. The judgment of conviction is reversed and the cause is remanded for further proceedings in accordance with this opinion.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
JOHN T. PATTON, J. and JAMES D. SWEENEY, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App. R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22(E) unless a motion for reconsideration with supporting brief, per App. R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1)