OPINION.
The defendant appellant, Evelyn Hatcher, appeals from her conviction for possession of cocaine and tampering with evidence. In four assignments of error she asserts (1) that the trial court erred by failing to suppress evidence obtained after a warrantless entry into her apartment by police officers; (2) that an affidavit used to obtain a warrant for a subsequent search of the apartment was invalid due to material omissions; (3) that there was insufficient evidence to support her convictions; and (4) that her convictions were contrary to the manifest weight of the evidence. None of the assignments of error has merit. We have sua sponte
removed this case from the accelerated calendar.
 I.
On June 12, 1998, United States Postal Inspector Donald R. Filer obtained a search warrant from a magistrate of the United States District Court to open an express mail package addressed to Hatcher at 5847 Lathrop Drive, Cincinnati. Inspector Filer contacted Cincinnati police and, together with Officer Paul Fangman, opened the package. It contained seven grams of powdered cocaine. They removed 5.72 grams — an amount sufficient to establish a fourth-degree felony — and resealed the package. Inspector Filer, dressed as a postman, then delivered the package to Hatcher's apartment, which was located on the second floor of a four-family building. Hatcher accepted the package and closed the door. Another woman arrived almost immediately afterward and entered the apartment.
Approximately five minutes later, Officer Fangman and other Cincinnati police officers, who were on the premises but had not actually witnessed the delivery, knocked on Hatcher's door and identified themselves as the police. A female voice inside responded that she had to put her dog out on the balcony before she opened the door. According to Officer Fangman, he had observed Hatcher's dog already out on the balcony as he and his men had arrived at the building.
Officer Fangman and his men waited for "several moments." Officer Fangman testified that, as they waited, Hatcher continued to communicate through the closed door that she was in the process of putting her dog out on the balcony. He testified that throughout this period he could hear, coming from inside the apartment, the sounds of commotion — scurrying around, paper tearing, a toilet flushing.
The officers, who had a ram, knocked again. This time Officer Fangman advised Hatcher through the door that if the door was not opened quickly, he and his fellow officers would ram it down. Hatcher opened the door, and according to Officer Fangman, she invited them to come in. When asked upon cross-examination if Hatcher was not, at that point, screaming at the police to show her a search warrant, Officer Fangman responded, "Not at that time. She invited us in the residence." Officer Fangman did concede, however, that if Hatcher had not allowed him and his fellow officers into the apartment, they would have forced entry "for our safety."
Once inside the apartment, Officer Fangman told Hatcher why they were there and asked for the package. At first, Hatcher denied receiving it. She then admitted that she did accept the package, but said that it was empty. Officer Fangman testified that during a protective sweep of the apartment he saw "in plain view" pieces of the package scattered on the kitchen floor near the bathroom. When the officers asked to search the apartment, Hatcher refused. The officers then handcuffed her and permitted the other woman to leave. Officer Fangman subsequently obtained a search warrant. Upon his return to the apartment, and in Hatcher's presence, he recovered the express mail envelope, the torn package, a plastic scale with cocaine residue, a briefcase containing a small quantity of marijuana and a marijuana pipe, $350 in cash, and several firearms.
The trial court overruled Hatcher's motion to suppress and found her guilty of both counts charged in the indictment. The trial court found Hatcher not guilty of the firearm specification accompanying each count. It imposed concurrent sentences of five years' community control and ordered Hatcher to perform one hundred hours of community service, to maintain employment, and to submit to periodic drug testing.
 II.
In her first assignment of error, Hatcher challenges the trial court's decision denying her motion to suppress. She contends that the initial, warrantless entry into her apartment was not justified by any exception to the warrant requirement, including the exception based upon exigent circumstances. The state, on the other hand, argues that the record clearly establishes that the entry was consensual, thus eliminating the need for any further Fourth Amendment analysis.
Addressing first the state's argument, we note that Hatcher did not testify or otherwise put on any defense. Thus there is no direct evidence of her state of mind as she opened the door to Officer Fangman and his fellow officers. Consequently, Officer Fangman's statement that she "invited" them into the apartment is unrebutted, at least by any other testimonial evidence. The state argues that his testimony is entirely consistent with the scenario, supported by the facts, in which Hatcher first employed the necessity of putting the dog out on the balcony as a stalling tactic, scrambled to destroy the evidence, and then willingly opened the door to the police. Hatcher, on the other hand, contends that she was given a Hobson's choice of either leaving the door locked or having it rammed in, in which case any invitation to enter, either express or implied, that she may have given was the product of coercion, not free will.
Clearly there was some competent, credible evidence from which the trial court could have concluded that Hatcher consented to the entry. Unfortunately, both the transcripts of the hearing and the order denying the motion fail to provide any reason for the trial court's decision. Absent specific findings of fact, we cannot speculate as to how the trial court viewed this evidence.
The issue of Hatcher's consent, however, becomes moot if the police did not require a warrant to enter Hatcher's apartment. This raises the issue, framed by Hatcher originally, whether the state demonstrated that the entry was justified under the exigent-circumstances exception to the warrant requirement. We hold that it did.
The exigent-circumstances exception is not a broad emergency doctrine but a "specifically established and well-delineated exception" to the warrant requirement. Katz v. United States
(1967), 389 U.S. 347, 88 S.Ct. 507, 514. It permits a warrantless arrest in a home if probable cause to arrest and exigent circumstances exist. Payton v. New York (1980),445 U.S. 573, 583-590, 100 S.Ct. 1371, 1378-1382. An exigent circumstance is one that prompts police officers to believe either that a person in the home is in need of immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal or destruction of evidence or contraband.Mincey v. Arizona (1978), 437 U.S. 385, 385, 392-393,98 S.Ct. 2413-2414; Minnesota v. Olson (1990), 495 U.S. 91, 101,110 S.Ct. 1684, 1690.
The mere desire to conduct a search for evidence, however, is not an exigent circumstance. Furthermore, a "warrantless search must be `strictly circumscribed by the exigencies which justify its initiation.'" State v. Applegate (1994), 68 Ohio St.3d 348,350, 626 N.E.2d 942, 944, citing Terry v. Ohio (1968), 392 U.S. 1,26, 88 S.Ct. 1868, 1882. The state has the burden to demonstrate, by the totality of the circumstances, the exigent circumstances necessary to overcome the presumption of unreasonableness that attaches to any warrantless entry and search of a home. Welch v.Wisconsin (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, citingPayton v. New York, 445 U.S. at 586, 100 S.Ct. at 1380; State v.Jenkins (1995), 104 Ohio App.3d 265, 661 N.E.2d 806.
It also bears emphasis, as this court has recently observed, that the "gravity of the underlying offense is considered a principal factor in determining the applicability of the exigent circumstances exception." State v. Banks (Aug. 20, 1999), Hamilton App. No. C-980774, unreported. Thus, the exception rarely sanctions the warrantless entry into a home where there is probable cause to believe that only a minor offense has been committed. Welsh, supra, at 753, 104 S.Ct. 2098-2099. This has been generally construed to mean that the exception applies only to felony offenses, not misdemeanors. Banks, supra; see, also,State v. Jenkins (1995), 104 Ohio App.3d 265, 661 N.E.2d 806;Cleveland v. Shields (1995), 105 Ohio App.3d 118, 663 N.E.2d 726. Here, the two offenses were felonies of the third and fourth degree.
At oral argument, Hatcher contended that while the officers may have had probable cause to obtain a search warrant, they did not have probable cause to arrest her. We disagree. The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. State v.Heston, 29 Ohio St.2d at 155-156, 280 N.E.2d at 379, citing Beckv. Ohio, 379 U.S. at 91, 85 S.Ct. at 225. This is a question of law. The arresting officer's subjective belief or motivation in the detention of the accused is not material to the legality of the detention. The test is whether there was an objective justification for the detention and arrest. State v. Robinette
(1997), 80 Ohio St.3d 234, 236, 685 N.E.2d 762, 765, relying onWhren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769.
Hatcher asserted at oral argument that the officers had no evidence to justify a belief that she was the person for whom the express mail package was intended merely because it was mailed to her address. This assertion ignores the fact, however, that the package was addressed to her personally — it did not bear only her street address — and that she accepted delivery. Given this, as well as the knowledge that the package contained powdered cocaine, we hold that the police had sufficient information to warrant a prudent belief that she was engaged in criminal activity.
The sounds from within the apartment, furthermore, after the officers identified themselves, were sufficient to cause a reasonable belief that evidence or contraband was being destroyed while the police were being held at bay outside. See State v.Lushch (Dec. 1. 1994), Cuyahoga App. No. 66395, unreported; UnitedStates v. Meredith (C.A.6, 1997), 107 F.3d 872. Officer Fangman testified that he heard the sounds of frenzied activity and a toilet flushing. It can be inferred from Officer Fangman's testimony that he knew that the quantity of cocaine Hatcher had accepted could easily be disposed of by flushing it down the toilet. Consequently, the evidence satisfied the state's burden to establish Officer Fangman's justifiable belief that Hatcher was engaged in destruction of the evidence.
Our decision in State v. Jenkins, supra, relied on by Hatcher, is factually distinguishable. In Jenkins, we assumed without deciding that the officer had probable cause, based on a neighbor's tip, to believe that the suspect was selling marijuana from his apartment. In Jenkins, however, the circumstance justifying the exigency — observation of the defendant flushing marijuana down the toilet — did not occur until the officer had already forced entry into an apartment by kicking down the door. Prior to that, all the officer had observed through the window shade, after being denied entry, was the defendant taking a few steps backward and running. In other words, in Jenkins the forced entry precipitated the exigent circumstances, rather than the exigent circumstances precipitating the entry. Accordingly, we held that "[a] warrantless entry of a home by law enforcement authorities, even based on probable cause, cannot be justified by exigent circumstances of their own making." Id. at 271,661 N.E.2d at 810.
Here, however, even if we assume that the officers ultimately gained admittance by a coercive threat, as Hatcher contends, the circumstances that had developed while they were still outside the door, seeking entry, justified their belief that evidence or contraband was being destroyed. First, they knew with certainty that cocaine had been delivered five minutes before their arrival. Then, after announcing their presence, they were given a reason for delay — the need to put the dog out on the balcony — that they had reason to suspect was a stall, having earlier detected the dog out on the balcony. Then, still outside the door, they heard the sounds of scurrying, the tearing of paper, and, finally, the telltale flush. All these circumstances, occurring prior to the entry, were sufficient to create in the officers' minds a reasonable belief that contraband was being destroyed inside. Thus, no matter whether there had actually been an invitation, the officers were entitled to make a warrantless forced entry into the apartment.
The first assignment of error is, therefore, overruled.
 III.
In her second assignment of error, Hatcher challenges the search warrant obtained by Officer Fangman following the officers' initial warrantless entry. She contends that Officer Fangman withheld from the judge who issued the warrant information concerning the earlier warrantless entry. She argues that this omission was material, and that if the information had been divulged, the judge would have refused to issue the search warrant. However, because this assignment of error is premised on Hatcher's argument that the initial entry was illegal, it is largely disposed of by our resolution of the first assignment of error, in which we found no illegality in the entry. The only argument Hatcher has left under this assignment of error is that the affidavit did not include everything that it could have; however, absent any evidence of falsehood or concealment of illegal activity, there is no basis to presume that the judge who issued the warrant would have done differently upon receiving additional facts.
Hatcher's second assignment of error is, therefore, overruled.
 IV.
In her third assignment of error, Hatcher challenges the sufficiency of the evidence for her convictions of possession of cocaine and tampering with evidence. The weight to be given to the evidence and the credibility of witnesses were primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. We hold that the record contains substantial, credible evidence from which the trial court could have reasonably concluded that all elements of the offenses under at R.C. 2925.11(A) and R.C. 2921.12(A) were proven beyond a reasonable doubt. State v. Waddy (1991), 63 Ohio St.3d 424,588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921,113 S.Ct. 338.
 V.
In her fourth assignment of error, Hatcher claims that her convictions were against the manifest weight of the evidence. Our review of the record fails to persuade us that the trial court, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211; State v. Thompkins (1997), 78 Ohio St.3d 380,387, 678 N.E.2d 541, 546-547. As we have already noted, Hatcher did not present a defense to the charges. Absent any contrary evidence, the state's case as set out by its witnesses clearly weighed in favor of her convictions.
Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
 PAINTER and SHANNON, JJ., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.